BEIT HAVURAH ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NORFOLK ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and D. SHEA, Js.

Argued January 5—decision released May 8, 1979

*Wesley W. Horton* and, of the New York bar, *Nathan Z. Dershowitz,* with whom were *Peter C. Herbst* and, on the brief, also of the New York bar, *Stephen M. Jacoby,* for the appellants (named plaintiff et al.).

*Paul Lichterman,* pro se, an appellant (plaintiff).

*Edward J. Quinlan, Jr., H. James Stedronsky* and *David M. Cusick,* for the appellees (defendants).

*H. William Shure* filed a brief as amicus curiae.

PETERS, J. This case concerns the impact of town zoning regulations on a Jewish synagogue. In 1975, the plaintiff Beit Havurah[1] purchased property located within a "village residence" zoning district in the town of Norfolk. At the time of purchase, applicable zoning regulations included as permitted uses in such a district "churches and other places of worship" and related "accessory uses." The regulations for such a district, however, required a special use permit for "non-profit educational, religious, fraternal, scientific or charitable institutions." The defendant zoning board of appeals determined, after extensive hearings, in May, 1976, that Beit Havurah was a place of worship and that provision of sleeping accommodations in its building was a permitted accessory use on certain designated

---

[1] Beit Havurah is a religious society that provides a place for devout persons to spend several days together for the purpose of prayer, celebration of festivals and religious events, Jewish study and meals satisfying religious requirements.

nights. That determination left open whether accommodations on other nights might also constitute a permitted accessory use. In subsequent proceedings, in November, 1976, the defendant zoning board of appeals concluded that the providing of unrestricted overnight accommodations, on dates other than those previously designated, was not an accessory use by a house of worship but was rather a special use by a religious institution and as such required application for a special use permit. Separate appeals were taken to the Court of Common Pleas, by neighboring landowners with respect to the defendant board's May decision, and by the plaintiff Beit Havurah with respect to the defendant's November decision. The trial court consolidated the appeals and upheld both decisions.[2] No further appeal was taken from the first decision, but the plaintiff Beit Havurah has appealed[3] from the judgment dismissing its appeal of the November decision.

It is important, before we address the merits of this appeal, to clarify what is no longer at issue. It has been dispositively determined that Beit Havurah is a place of worship, a synagogue. Beit Havurah's use of its property is a permitted use, entitling it to

---

[2] The trial court found that the plaintiff Beit Havurah was aggrieved by the decision of the Norfolk zoning board of appeals, but refused to find that individual members of Beit Havurah were independently aggrieved. This failure to find has been assigned as error. Whether it was in error is irrelevant because any determination as to *additional* aggrieved parties would have no effect on the outcome of this appeal. *Schwartz* v. *Town Planning & Zoning Commission*, 168 Conn. 285, 287 n.2, 362 A.2d 1378 (1975). We will therefore refer to the plaintiff, Beit Havurah, in the singular.

The defendant zoning board of appeals is the named defendant in this case; the neighboring landowners who appealed the May decision were permitted to intervene as codefendants herein but assert no interest distinguishable from that of the named defendant.

[3] The plaintiff's appeal followed the grant of certification by this court.

occupy its premises without restriction except for the contested providing of sleeping accommodations for its membership and guests. At any time of the day or night, Beit Havurah may use its premises for prayer, celebration of festivals and religious events, Jewish study, meals satisfying religious requirements or other activities appropriate to its style of worship, as well as for other accessory uses such as recreation or maintenance. Even sleeping accommodations are a permitted accessory use on those Sabbath and religious holiday nights when travel restrictions of the Judaic law are in effect and for one night beyond the end of each Sabbath or holiday. The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district. Although property whose use constitutes a permitted use is not immune from regulation under the laws of nuisance or other applicable statutes such as those relating to public safety, no violation of any such laws has been alleged.

The plaintiff argues that the trial court was for two reasons in error in dismissing the plaintiff's appeal from the November decision of the defendant zoning board of appeals. The plaintiff maintains that the court acted improperly in finding that lack of overnight accommodations did not limit the religious activities of Beit Havurah and in concluding, accordingly, that unlimited overnight lodging was not an accessory use. The plaintiff claims further that the court erred in requiring the plaintiff to exhaust its zoning remedies, through application for

a special use permit, before it would consider the constitutionality of such secular restrictions on the use of religious property.

The trial court's finding that overnight accommodations were severable from Beit Havurah's religious activities, and hence not a permitted accessory use, was an affirmance of the conclusion reached by the defendant zoning board of appeals. Review of decisions of local zoning authorities acting within their administrative capacity is limited to a determination, principally on the record before the zoning board,[4] whether the zoning board acted illegally, arbitrarily, or in abuse of the discretion vested in it. *Tazza* v. *Planning & Zoning Commission,* 164 Conn. 187, 191, 319 A.2d 393 (1972); *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 251, 230 A.2d 595 (1967). As we have recently reiterated, when a

---

[4] "[General Statutes] Sec. 8-8. APPEAL FROM BOARD TO COURT. REVIEW BY SUPREME COURT. Any person or persons severally or jointly aggrieved by any decision of said board . . . may, within fifteen days from the date when notice of such decision was published . . . take an appeal to the superior court for the judicial district in which such municipality is located, which appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court. . . . The court, upon such appeal, shall review the proceedings of said board and shall allow any party to such appeal to introduce evidence in addition to the contents of the record of the case returned by said board if the record does not contain a complete transcript of the entire proceedings before said board, including all evidence presented to it, pursuant to section 8-7a, or if, upon the hearing upon such appeal, it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court may take such evidence or appoint a referee or committee to take such evidence as it directs and report the same to the court, with his or its findings of facts and conclusions of law, which report shall constitute a part of the proceedings upon which the determination of the court shall be made. The court, upon such appeal and after a hearing thereon, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. . . ."

zoning authority has stated the reasons for its actions, the reviewing court ought to examine the assigned grounds to determine whether they are reasonably supported by the record and pertinent to the considerations the authority was required to apply pursuant to the zoning regulations. *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 25–26, 376 A.2d 385 (1977); *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 540, 271 A.2d 105 (1970).

The issue before the defendant zoning board of appeals on the second appeal was whether Beit Havurah's proposed unrestricted overnight use of its premises was an accessory use "customary with and subordinate to [a place of worship] and located on the same lot with the principal use." Zoning Regulations of the town of Norfolk, Art. II (C) (1) (h). In the official memorandum of the decision against Beit Havurah, the spokesman for the majority of the board reported separately the views of each of the three members of the majority. One member stated her belief that staying overnight was residential rather than religious in nature and that operating the Beit Havurah property as a "residence house" would require a special exception. A second member's primary concern was the use of the Beit Havurah property by unlimited numbers of people, as an "expanded resort type of operation," which should be controlled by a special use permit. A third member found that the providing of overnight accommodations was an activity characteristic of a "religious institution," rather than of a house of worship, and therefore required a special permit. He found that denial of overnight use during the week did not "hinder Beit Havurah's right to worship in any way." The two dissenting members of the board found limitations on the time

when Beit Havurah could use its property to be a constitutionally impermissible interference with that group's freedom to worship.

The question before us is whether the reasons assigned by the memorandum of decision of the board in November are reasonable and pertinent in light of the board's decision in May, which has now become the law of the case, as well as the record produced before the board. It is not relevant that under different zoning regulations Beit Havurah might not have been a permitted use; *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 268, 121 A.2d 640 (1956); and it is no longer relevant whether the board might earlier have determined Beit Havurah to be a religious institution, eligible only for consideration as a special use, rather than a house of worship, a permitted use. The practical effect of the board's decision is either to persuade Beit Havurah to curtail its late-night use of its premises entirely, a purpose disclaimed by the defendant's brief, or to require Beit Havurah members to seek overnight lodging at one of the local motels.[5] Although a special use permit, *if granted,* would obviate this problem, that alternative cannot be dispositive as to whether Beit Havurah has a right to an accessory use without a special permit. Cf. *Moore* v. *City of East Cleveland,* 431 U.S. 494, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977). Since it has been accepted that Beit Havurah's use of its prop-

---

[5] Whether these effects are in fact distinguishable is far from clear. The record contains a letter, dated July 5, 1977, from the local enforcement officer concerning "inspections" at the Beit Havurah property one evening at 8:20 p.m., and the following morning at 6 a.m. and 7 a.m. The inspections were apparently intended to disclose whether the premises were being unlawfully used, but were extended parenthetically to inquiries concerning Beit Havurah cars legally parked in the rear of the property.

erty is that of a synagogue, this "main, principal and dominant use . . . determines its character [for zoning purposes]." *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 75, 147 A.2d 472 (1958). We view as highly suspect the assumption implicit in the board majority's interpretation of the town zoning regulations that a particular use of one and the same property, by one and the same party, can simultaneously be governed by conflicting provisions relating to permitted and to special uses.

If considerations relating to special use permits are excluded from the reasons advanced by the majority of the board for denying an accessory use, there are left the conclusions that Beit Havurah's unrestricted overnight use of its property as a lodging is residential, a resort type of operation, and unrelated to Beit Havurah's right to worship. If any of these reasons is borne out by the record, that would suffice to sustain the action of the board. *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 26, 376 A.2d 385 (1977).

The criteria that determine whether a use is accessory must, of necessity, be shaped by the primary use to which it is incidental. What is a reasonable accessory use for a private dwelling; *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 264 A.2d 552 (1969); is therefore not a helpful precedent for determining what is "customary with and subordinate to" a house of worship. A leading authority notes, in describing uses accessory to churches: "It has previously been commented upon that the concept of what constitutes a church has changed from a place of worship alone, used once or twice a week, to a church used during the entire week, nights as well as days, for various parochial and community

functions. . . . The question arises as to the extent to which the additional activities are covered by the cloak of immunity which traditionally has been extended to the church. The language of the courts in several cases indicates that it is difficult to find an activity which, if sponsored by the church, would not share the immunity." 2 Rathkopf, The Law of Zoning and Planning, § 20.03, p. 20–53 (1978). Rathkopf cites as permitted accessory uses such far-ranging activities as "parking lots and playgrounds, convents, rectories, and monasteries . . . day care centers, drug rehabilitation centers, and softball fields." Id., 20–54.

If the reasoning of the board in its November decision is put into the legal framework of the accessory use issue, the board's statements can be interpreted as a conclusion that Beit Havurah's unrestricted overnight use of its premises on occasions not governed by Judaic travel restrictions was a secular use of its property, not "customary and subordinate" to a house of worship. The evidence in support of this conclusion is cited in the defendant's brief. Most of Beit Havurah's use of its overnight accommodations has taken place during periods of travel restrictions. Contemporary overnight lodging in other synagogues relates only to weekend use, and even then is limited to only five synagogues in the state. Other synagogues do not have bedrooms, while the Beit Havurah house has eight bedrooms and only one prayer room and one community room. According to a professional city planner, religiously motivated group living arrangements should be considered "six or seven families living together in a single family zone," a use dependent upon the grant of a special use permit. All of this evidence was part of the record before

the board at the time of its May decision, and was incorporated by reference, with the agreement of all of the parties, for the November decision. The city planner's testimony, although relevant to the original decision about Beit Havurah's primary status as a house of worship, sheds little light on accessory use.

For the plaintiff, there was extensive evidence before the board that Beit Havurah, a nontraditional synagogue, had nontraditional needs. The purpose of Beit Havurah, accepted in the May board decision, was to provide an intensive religious fellowship for a "gathered" congregation, a membership coming from as far afield as Massachusetts and Washington, D.C. The goal of Beit Havurah was to stimulate and support close, personal worship and interaction among small subgroups. Central to this kind of religious community is the concept of shared time, during which the members come and remain together to worship in a variety of ways, praying, studying, celebrating religious festivals, and preparing meals according to religious laws. These religious activities can take place at any time of the week, and can continue on into the night, or extend over several days. For such a religious community, overnight accommodations are essential; without them, Beit Havurah, it was testified, could not exist. This evidence was challenged by cross-examination both before the board and before the trial court, but remains essentially uncontradicted.

When this record is viewed in its entirety, and due regard is given to the plaintiff's established status as a house of worship, it is clear that the defendant board's denial of accessory use cannot stand. Nontraditional as well as traditional synagogues are protected by the provisions of the state

and federal constitutions guaranteeing freedom of religion.[6] The legitimacy of nontraditional religious practices cannot depend upon what is customary among more traditional religious groups. *United States* v. *Ballard,* 322 U.S. 78, 86, 64 S. Ct. 882, 88 L. Ed. 1148 (1944); *Follett* v. *Town of McCormick,* 321 U.S. 573, 577, 64 S. Ct. 717, 88 L. Ed. 938 (1944). What are the particular tenets of a recognized religious group is not a matter for secular decision. "Indeed, it is the essence of religious faith that ecclesiastical decisions are reached and to be accepted as matters of faith whether or not rational or measurable by objective criteria." *Serbian Eastern Orthodox Diocese* v. *Milivojevich,* 426 U.S. 696, 714–15, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976). Beit Havurah has testified, without contradiction, that sleeping accommodations are essential to its religious fellowship, and that their absence would severely limit its religious activities. Beit Havurah has never asserted any interest in using its Norfolk property for other than religious purposes, and there is no evidence of use solely for the vacations of members. There was therefore no basis in fact for the board's conclusion that unrestricted overnight lodging was a residential or resort type of operation, unrelated to Beit Havurah's right to worship. No other ground, no countervailing interest, "of the highest order"; *Wisconsin* v. *Yoder,* 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); has been advanced for denying the plaintiff unlimited use of its property for religious purposes. The board and the trial court were consequently also in error in their ultimate conclusion that Beit Havurah's sleeping accommodations constituted a prohibited rather than an accessory use.

---

[6] U.S. Const., amend. I; Conn. Const., art. 1, § 3.

Because of our holding that Beit Havurah's use of its property constituted a permitted accessory use, we need not consider the constitutional implications of special use permits for religious institutions.

There is error, the judgment is set aside, and the case is remanded with direction to sustain the appeal and to reverse the order of the board.

In this opinion LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (concurring). While I agree with the dissent that the zoning board, on the basis of the evidence before it, could initially have determined that the provision of overnight accommodations by the plaintiff was not an "accessory use" under existing zoning regulations on the ground that such activity was not "customary" with the use of the premises as a house of worship, the record reveals that the board expressly found to the contrary, ruling that the provision of overnight accommodations on nights when there are travel restrictions under Judaic law constitutes an "accessory use" and is therefore permitted. As things now stand, the provision of overnight accommodations by Beit Havurah is permitted on all Sabbath and religious holiday nights when travel restrictions are in effect, and for one night subsequent, which means that overnight accommodations are allowed on *every* Friday and Saturday, as well as on certain key Jewish holidays.[1] No appeal from that decision having been taken, that decision is now final.

---

[1] In a letter dated September 20, 1976, from Paul Lichterman, a plaintiff in this case, to the zoning board of appeals, certain "worship periods" were listed as having travel restrictions:

To my mind, the board's determination that overnight accommodations on certain nights are an accessory use, once final, necessarily precludes the board from subsequently ruling that overnight accommodations on other nights, i.e., on nights on which there are no travel restrictions under Judaic law, are not also accessory uses, because it is apparent from the record that this later determination is premised on religious grounds and involves governmental entanglement in a constitutionally prohibited area.

To permit the zoning board to limit or qualify the use already granted on the basis of religious grounds, i.e., the presence or absence of travel restrictions in Judaic law, is, in effect, to permit inquiry by a secular body into the validity of a par-

"ROSH HASHANNA—Jewish New Year and Day of Judgment, 2 days and 2 nights—generally falls in September.

YOM KIPPUR—Day of Atonement. 1 night and 1 day, falls 10 days after Rosh Hashanna.

SUCCOT—Festival of Booths—begins 15 days after Rosh Hashanna and lasts 9 days and 9 nights. The first 2 days and nights are considered a major festival with travel restrictions.

SHEMINI ATZERET AND SIMHAT TORAH—The last 2 days and nights of the Succot Festival. A major festival marked by singing, dancing and parading with the Torah Scroll at night.

PESACH—Passover Festival, or Feast of Matzot lasting 8 nights. The first two days and the last two days are major festivals with travel restrictions. The first two nights are marked by special meal celebrations called Seders, lasting several hours. There are special dietary restrictions during the entire 8 day period. Pesach falls in April.

SHAVUOT—Festival of Weeks or Festival of the Giving of the Ten Commandments. It falls seven weeks after Pesach. It lasts 2 days and 2 nights. Traditional celebration consists of overnight study until daybreak, and morning prayers.

SABBATH—The Sabbath, 1 night and 1 day. Every Friday night and Saturday day celebrated by prayers, special meals, study and relaxation. Travel restrictions apply to this worship period."

ticular religious belief or practice. See *Serbian Eastern Orthodox Diocese* v. *Milivojevich,* 426 U.S. 696, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976) ; *Presbyterian Church* v. *Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969). Entanglement in religious matters by a governmental body can easily lead to limitations on the free exercise of religion and impermissibly infringes on the constitutional prohibition against laws respecting the establishment or practice of religion.

I must, therefore, join with my colleagues in holding that the appeal of the plaintiffs must be sustained.

D. SHEA, J. (dissenting). I disagree. The issue presented by this case is essentially a factual one— whether the use of the plaintiff's property for overnight lodging for its members, without restriction to weekends and religious holidays, is an accessory use to its permitted use as a "church or other place of worship." Under the zoning regulations an accessory use must be "customary with and subordinate to" the principal use and it must also be located on the same lot. There is no serious question but that the use sought by the plaintiff is incidental or "subordinate to" the principal use of the property as a synagogue, and that it is on the same lot. I do not agree, however, that the board of appeals was bound to conclude from the evidence presented at the hearing that providing lodging for members without limitation was "customary with" the principal use.

The fact that providing overnight accommodations may be a part of the religious tradition of the plaintiff or that the denial of the privilege would impose

some hardship upon it would not render such a use "customary." This word in an accessory use provision requires the court "to determine whether it is usual to maintain the use in question with the primary use of the land." *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 512, 264 A.2d 552 (1969). The evidence was that only five synagogues in the state provided any overnight accommodations and that these were limited to weekend use. The board may well have relied upon this evidence in deciding that such lodging on weekends or holidays was "customary," but that the unlimited use sought by the plaintiff was "truly unique or rare," as stated by one of its members. For a use to qualify as accessory to a principal use the incidence of that use in conjunction with the similar principal uses of other properties must be "more than unique or rare." *Lawrence* v. *Zoning Board of Appeals,* supra, 513. It was not unreasonable or arbitrary for the board to have found that the evidence did not establish that providing overnight lodging for members without restriction was usual or customary for a synagogue. The board properly concluded that the unrestricted use requested by the plaintiff was so extraordinary in extent that it could not be regarded as an accessory use and that it should more appropriately be the subject of a special exception for a religious institution where the suitability of the property for such a use could be examined under the applicable standards pertaining to the adequacy of water, sewage and parking facilities as well as fire and police protection. The effect of the decision of the majority is to preclude any such inquiry.

The suggestion in the majority opinion that churches or places of worship are shrouded in a

"cloak of immunity" from the operation of the zoning regulations is not consistent with previous decisions of this court. *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 724, 184 A.2d 42 (1962); *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 121 A.2d 640 (1956). To the extent that this implication of the majority has constitutional overtones and also in respect to the constitutional issues raised by the plaintiff, the administrative remedy of applying for a special exception should be exhausted before judicial consideration of such matters would be warranted. *Florentine* v. *Darien,* 142 Conn. 415, 428.

The explanation of the various considerations which induced each of the three majority members of the board to vote as they did ought not to be treated as the equivalent of a formal statement of the reasons for the action of the board. See *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 540, 271 A.2d 105 (1970). "These individual views are not available to show the reason for, or the ground of, the board's decision." *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 214, 257 A.2d 795 (1969). Such reasons "can only be shown by the vote of the board." *Thayer* v. *Board of Appeals,* 114 Conn. 15, 20, 157 A. 273 (1931). The only vote taken was upon the question of whether unrestricted overnight lodging constituted an accessory use to the principal use of the property as a synagogue.

I would affirm the judgment of the trial court.