[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Donald Petrucci is the owner of real property located at 6911 Main Street in Stratford, across from the Sikorsky Aircraft Plant, facing Route 110. (Plaintiffs' Exh. 1, 11/12/90, Deed; Complaint, 1/23/90, paragraph 1.) In contemplation of a plan of development created by and with co-plaintiff Homewood Suites Equity Development Corp., a Tennessee corporation, (equitable owners of the property under a contract of sale with plaintiff Petrucci [Complaint, para. 2]), the plaintiffs submitted a petition for a special case permit to the defendant Stratford Zoning Commission ("Commission") on or about October 27, 1989. Such a petition and approval of special case is required by Sections 3.17, 6.2.7 and 6.2.12 of the Stratford Zoning Regulations. (Complaint, paras. 1, 2, 7.)
The subject property is located in an LBB District under CT Page 2781 the Regulations. (Complaint, para. 6.) The uses permitted in such a district are enumerated at Section 6.2 et seq. of the Stratford Zoning Regulations, all of which are subject to certain specific requirements under Section 6.2.12. "Hotels, motels and restaurants" are permitted under Section 6.2.7 (with additional conditions recited under Section 6.2.12).
A hearing was held on the plaintiffs' petition on November 21, 1989. (Record item #5, Legal Notice; record item #14, Minutes of Public Hearing, Nov. 21, 1989; Complaint, para. 11.) At a subsequent meeting on January 8, 1990, the Commission voted 3-2 to deny the plaintiffs' application. (Complaint, para. 12.) By letter addressed to the plaintiffs' attorney dated January 9, 1990, the denial was communicated to the plaintiffs. (Record item #4). The letter does not state the reason[s] for the Commission's decision.
The plaintiffs have appealed to this court pursuant to Conn. Gen. Stat. 8-8. A hearing was held by the court on November 21, 1990, with supplemental briefs submitted by December 12.
When ruling on a special exception, a zoning authority acts in an administrative capacity and its function is simply to determine whether the proposed use is expressly permitted and whether the standards for issuing a permit are satisfied. Housatonic Terminal Corp. v. Planning Zoning Board, 168 Conn. 304,307 (1975); A.P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 185 (1974). Acting in such capacity, the authority has no discretion to deny a special permit if the standards are satisfied. See Reed v. Planning Zoning Commission, 208 Conn. 431, 433 (1988) (discussing subdivision applications); Westport v. Norwalk, 167 Conn. 151, 155 (1974).
Conn. Gen. Stat. 8-3 states that "[w]henever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision." This language is directory only, and the failure of the commission to state the reasons for its action on the record does not make the action void. Corsino v. Grover, 148 Conn. 299, 310 (1961) (citations omitted). Where the agency fails to state the reasons for its action on the record, or where the reasons stated are inadequate, the trial court must search the record to determine whether a basis exists for the agency's decision. Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732
I (1988), affirmed, per curiam, 211 Conn. 76 (1989).
If the agency action is supported by the record, the appeal I must be dismissed. CT Page 2782
If the application fails to conform to the standards set forth in the regulations, it was properly denied. Black's Law Dictionary (5th ed.) defines the term "standard" as "a type, model, or combination of elements accepted as correct or perfect," and the American Heritage Dictionary defines it as "an acknowledged measure of comparison for quantitative or qualitative value; criterion." If the application does conform to the standards, as "standards" is above defined, the application was denied illegally; any subjective criteria imported into the special case regulations by the agency, even if found elsewhere in the regulations, do not constitute "standards" by definition and may not be considered by the agency or by the court. Westport v. Norwalk, 167 Conn. at 155. "If a landowner meets the conditions set forth for a special exception, the board is bound to grant one. . ." Sheridan v. Planning Board,159 Conn. 1, 6 (1969).
Therefore the initial inquiry for the court is an examination of the grounds relied on by the agency in its action. In the minutes of the Stratford Zoning Commission dated January 8, 1990 (Record item #16), wherein the application was denied, the following appears:
 A motion was then made by Mr. Miller seconded by Mrs. Youngquist to deny this petition for the following reasons:
 This is an intense use for the parcel and the area cannot take the additional traffic and this petition is not well suited for this site and does not meet Sections 18.1 and 20.2 of the Zoning Regulations.
The rule is well established that a party is not permitted to attack the constitutionality (on vagueness grounds) of regulations in a proceeding wherein he is attempting to "avail himself of a zoning ordinance". Bierman v. PZC, 185 Conn. 135,139 (1981). See also Cioffoletti v. PZC, 209 Conn. 544,563 (1989), where the issue was a "general attack" on the "adequacy of the regulations in setting forth standards for a decision upon an application." Id. The above cited cases may represent an impediment to the court's sua sponte consideration of the apparent vagueness of the considerations which the regulations incorporate. It appears that the regulations here are inadequate insofar as they do include various identifiable standards incorporate. It appears that the regulations here are inadequate insofar as they do include various identifiable standards (Section 6.2 is quite specific in delineating permitted uses in an LBB zone), but the reservation of an indeterminate and CT Page 2783 undefinable discretion in such regulations, precluding a special permit proceeding from ever being a ministerial act by the agency, is not sustainable. Such nebulous terms as "intense" or "well suited" have no legal definition and thus no legal merit as administrative guidelines.
 Although "the reasons given by a zoning authority, presumably composed of lay persons, to justify its action need not be in a form to satisfy the meticulous criterion of a legal expert[;] DeMars v. Zoning Commission, 142 Conn. 580,584, 115 A.2d 653 (1955); Daughters of St. Paul, Inc., 17 Conn. App. 53, 68, 549 A.2d 1076 (1988); a reason that is so conclusory as to give no hint of more concrete basis underlying the board's decision must be deemed inadequate. Caserta v. Zoning Board of Appeals, 23 Conn. App. 232, 237 n. 1 (1990)
The regulations referred to by the Commission in their statements, Secs. 18.1 and 20.2 are as follows:
18.1. Generally.
In their interpretation and application, the provisions, of these regulations shall be held to be the minimum requirements opted for the promotion of public health, safety, comfort, convenience and general welfare. It is not intended by these regulations to repeal, abrogate, or annul or in any way to impair or interfere with any existing decisions, orders, permits or waivers previously adopted, granted or issued under the Zoning Ordinance in existence heretofore as amended from time to time and it is not intended by these regulations to abrogate, annul, repeal, or in any way to impair or interfere with any existing provisions of the Building Code of the Town of Stratford or of any ordinances, rule, regulation or permit which hereafter may be adopted or issued pursuant to law relating to the use of buildings or premises. Further it is not intended by these regulations to abrogate, annul or in any way to impair or interfere with any easements, covenants or other agreements CT Page 2784 between parties provided, however, that where these regulations impose a greater restriction upon the use of buildings or premises or upon the height of buildings or require larger yards, courts or other open spaces than are imposed or required by such existing provisions of law or ordinance, or by such rules, regulations or permits, or by such easements, covenants or agreements, the provisions of these regulations shall control.
20.2. Special cases.
Those uses which are named as special cases by these regulations shall be considered to be permitted uses in the districts under which they are named, subject to approval by the commission as to each specific use. Each of these uses is declared to be of such peculiar and unusual nature in its effect on an area that in order to have it comply with the purposes of the zoning regulations it is necessary to consider it as a special case. The commission may, after public notice and hearing in the same manner required by law for zoning amendments, and by the affirmative vote of four or more members present at the hearing, approve the use after making special application of these regulations in harmony with their general intent by stipulating such restrictions as appear to the commission to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare.
Before approving any special case the commission shall consider (a) The size and intensity of such use and its effect on the comprehensive plan of development for the town. (b) The capacity of adjacent and the commission feeder streets to handle peak traffic. Each of these loads and hazards created by the use. (c)such peculiar. The emission of noise, light, smoke effect on an, odor, gas, dust or vibration in noxious or offensive quantities. (d) The overall regulations effect on tax valuation of neighborhood as a spec properties due to unusual CT Page 2785 topography of the location, the nature, location and height of buildings, walls, stacks, fences, grades and landscaping on the site. (e) The extent, nature and arrangement of parking facilities, entrances and exits. (f) Fire and police hazards involved. (g) All other standards prescribed by these regulations for the use.
Section 18.1, as applied to this application, means only that the application must comply with any specific requirements, i.e., "standards" imposed. Section 20.2 has no requirements ("standards") as such, except as subsection (g) might incorporate. The general considerations enumerated in Section 20.2 are exactly of the sort found wanting by the Connecticut Supreme Court in Helbig v. Zoning Commission, 185 Conn. 294,308 (1981):
There is no question that criteria contained in a zoning commission's regulations must be as reasonably precise as the subject matter requires and as reasonably inadequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law . . . and this is no less true of a municipal ordinance or regulation. . . We have explicitly said: `Every owner of property located in a town which has adopted zoning is entitled to be able to ascertain, with reasonable certainty, what uses he may legally be able to make of any portion of his property.' Helbig v. Zoning Commission, 185 Conn. 294,308 (1981) (citations omitted).
The reasons apparently enunciated by the agency in its denial are legally insufficient; they make reference not to specific regulations but rather to "considerations" too vague to admit of evenhanded application, in violation of the established rule above quoted. "Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within CT Page 2786 their express terms." PZC v. Gilbert, 208 Conn. 696, 705
(1988). Thus the court must examine the record to determine whether any other evidence supporting the agency's decision is disclosed.
There was considerable discussion by the participants at the public hearing on November 21, 1989, as to the egregious effect of additional traffic on the roads adjacent to the site. (Record item #14, comments of Messrs. Miller, Ryder, Hess, Addilson).
The reliance by the agency upon the alleged traffic problems fails as a matter of law if the application is for a permitted use, and as a factual matter in any event.
"The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely effect the district and preclude further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527,533 (1990) (quoting Beit Havurah v. ZBA, 177 Conn. 440, 443
(1979). "A special exception . . . allows an owner to put his property to a use which is expressly permitted under the regulations, in contradistinction to the grant of a variance, for instance, [which involves] a right to use his property in a manner forbidden by the zoning enactment. . ." Parish of St. Andrew's Church v. ZBA, 155 Conn. 350, 353 (1967). This application is for a permitted use, as that term is used in the cases cited, therefore, the offsite traffic considerations may not properly be considered by the agency. TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527,533 (1990) (quoting Beit Havurah v. ZBA, 177 Conn. 440, 443 (1979).
Counsel for the appellants stated at the hearing on November 21, 1990, that the applicable regulations for the zone in question were found in Section 6.2., and particularly under 6.2.12. Counsel for the appellees did not dispute the applicability of Section 6.2. and particularly 6.2.12. The sections referred to by the commission members have no effect as regulations or "standards" because of the lack of definition under Helbig and Caserta. The next inquiry is as to whether the application conforms to Section 6.2.12. The section reads:
6.2. Uses permitted in LBB Districts, subject to provisions of subsection 6.2.12 as to lot layout and arrangement of buildings and facilities on the lot.
6.2.1. Any use permitted in an RM District CT Page 2787 including residence apartments subject to the limitations set forth in section 5.3.
6.2.2. Professional and business offices and financial institutions.
6.2.3. Laboratories for analysis, research and experimentation, provided that no activity results in objectionable noise, odor, smoke or dust noticeable off the premises.
6.2.4. Photographic, blueprinting, photo stating, typesetting or printing establishments.
6.2.5. Buildings intended for the storage of commercial records or archives.
6.2.6. Radio or television studios or stations.
6.2.7. Hotels, motels and restaurants.
6.2.8. Motor vehicle service stations for the dispensing of fuel, tires and lubricants and for minor servicing only.
6.2.9. Retail services, agencies or stores conducted indoors which do not have for sale on the premises any merchandise or service giving off any objectionable noise, odor, smoke or dust noticeable off the premises; excluding the manufacture, processing or servicing of materials except as customarily incidental to a retail use, the sale of alcoholic beverages except as permitted under section 15 of these regulations, and those uses named in subsections 7.2.1, 7.2.2, 7.2.3 and 7.2.4.
6.2.10. Accessory uses customarily incidental to a permitted use, including a private garage for the storage of vehicles used in connection with a permitted use.
6.2.11. Signs as permitted in CNC Districts (subsection 7.7.4).
6.2.12. General requirements in LBB Districts: Due to the extremely irregular topography of such areas the general requirements for each CT Page 2788 individual use and location shall be jointly subject to the approval of the commission as a special case as provided in section 20 of these regulations. Minimum standards to be met by the lot and use before such approval is granted are: (a) That off-street parking shall meet the minimum area requirements of section 12 of these regulations, for each use, but be arranged to fit the topography of the lot so that no area for vehicle parking shall have a greater slope than 5 per cent and no ramp for entrance, exit or interchange between parking areas shall exceed 8 per cent slope. (b) That the lot contains more than 7,500 square feet and has a street frontage of 75 or more feet and a minimum depth of 100 feet. (c) That no building be within 30 feet of a street, or 50 feet of any area designated on the comprehensive plan as an RS District, or 8 feet of any side or rear lot line, or be greater in width than 50% of the lot frontage, or occupy more than 25% of the lot area. (d) That no entrance or exit drive be so arranged that a vehicle must leave or enter the street traffic lane at an angle greater than 30 degrees. Each lot must have its individual curbed access to the highway. (e) That the water supply be inadequate for the use proposed and that both the water supply and sewerage disposal meet all requirements of the health department of the Town of Stratford and the State of Connecticut. (f) That no building be so placed, or erected to such a height, that its highest point exceed 10 feet above the dividing line between the LBB District and any RS District.
Insofar as any reason for denial emerges from the record, the Board focused on concern about excess traffic and something they called "intensity." Board member Miller (Record item #14, pp. 12-13, 26-27) and residents Ryder (pp. 29-30), Hess (pp. 30-33), and Addilson (pp. 36) expressed their opinions that the traffic problem was bad and the proposed use would make it worse. Accepting arguendo the proposition that the special permit sought here was not a "permitted use" as in TLC and Beit Havurah, the question for determination becomes, "Does the record support a finding that traffic would be adversely impacted by the use applied for?" The record does not reasonably support such a finding. The traffic report (Record item #9) CT Page 2789 done by Barakos-Landino, testified to by Mr. Landino (Record item #14, pp. 10-15) showed that the anticipated increase in traffic was smaller than the average daily fluctuation in the number of vehicles (p. 28). The traffic report appears to incorporate considerable empirical research. The court on appeal from a zoning agency's decision is limited to a determination whether the record reasonably supports the conclusions reached by the agency. Burnham v. PZC, 189 Conn. 261, 265 (1983). Given the evidence in the record, the court must determine the reasonableness of a denial in the face of such evidence.
With regard to the agency's concerns about "intensity", the comments of Mr. Nicess and Attorney Fallon (Record item #14, pp. 15-26) make the case that the density of the proposed use is well within the contemplation of the regulations, insofar as they set forth "standards" as that term is defined, and there is no rebuttal evidence in the record.
The decision of the commission is without support in the record. The proposed use conforms to all the ascertainable "standards" enumerated above and the record discloses no evidence to support the agency's decision. The Defendant Commission acted illegally, arbitrarily and in abuse of their discretion in denying the Plaintiffs' petition.
The appeal is sustained and the Defendant Commission is ordered to grant the Plaintiffs' petition. There is no other conclusion that could be reached by the Defendant Commission.
DEAN, J.