[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, as owners of the property which is the subject of this case, applied for approval of a site plan. Their proposed use of the property was commercial (stores) and residential (apartments). Plaintiffs' application was filed with the commission on November 7, 1989. CT Page 10549
The property is in a GC zone. The proposed use is a permitted use in the zone.
In 1986, plaintiffs had obtained approval of a site plan for this site for a use quite similar to that proposed in the present (1989) application.
The defendant commission held a public hearing on the site plan application on December 12, 1989. Nearby residents spoke and petitioned against plaintiff's application. The thrust of their opposition was that the proposed use "would exacerbate an already poor drainage system in their neighborhood." Appellee's Brief, p. 2.
The Plainville Town Engineer presented a report "concluding that the proposed site plan would, indeed, cause additional drainage and flooding problems to nearby properties." Appellee's Brief, p. 2. On February 13, 1990, the commission considered the application. After discussion, the commission voted 5 to 1 against approval of the site plan application. "The commission cited the added drainage and flooding problems of the proposed site as its reason for the denial." Appellee's Brief, p. 2.
This appeal dated February 29, 1990, and returnable to this Court on April 17, 1990 followed.
At the court hearing, plaintiffs presented a certified copy of a warranty deed showing that they were owners of the subject property. As owners, they were aggrieved by the defendant commission's action. Bossert Corporation v. Norwalk, 157 Conn. 279,285 (1968). The defendant commission conceded so to the court.
As filed, plaintiffs' appeal contends that the present proposed use of the property modified the previously approved site plan so as to diminish the amount of storm water flowing from their property; more storm water flows from their property in to the strained storm water system under the plan approved (in 1986) and presently operating than would from the proposed use The appeal states:
 "A. The COMMISSION had previously approved a site plan for the subject premises including an addition of 6460 square feet to an existing lot and off premises storm water drainage system.
 "B. The subject revised site plan application represented a reduction in the total area of proposed new structure, reduced the impervious CT Page 10550 pavement area, changed the proposed use of the site from totally commercial to a commercial/residential mix and reduced the outflow of storm water drainage from said site into the municipal subsurface drainage system."
Appeal, p. 2, para. 6
The storm water drainage facilities on the property are connected to the municipal storm water drainage system. That system reportedly is inadequate. See testimony of G. Abrahamian, Defendant's Minutes, December 12, 1989 p. 17. The defendant commission conceded at the court hearing that the system into which the storm or surface water from plaintiffs' property empties belongs to the Town of Plainville.
At the commission hearing, plaintiffs claim they presented evidence to the effect that development in accordance with the new plan would contribute less water from their property to the town system than that from the site plan approved in 1986. The record does not disclose that the commission determined whether development in accordance with the new plan would generate more, less, or the same amount of water for the storm drainage system than would the 1986 approval. It is not clear to the court whether there was evidence before the commission sufficient for it to have made this determination.
The 1986 site plan application and its drawings are not a part of the record before the court. Since this material would be necessary to make the comparison relied upon by the plaintiffs and because of the court's limited ability to interpret the site plan drawings, the court is unable to find that the new plan would cause less of a burden on the town drainage system than that generated by the 1986 plan.
Section 8-3 of the General Statutes provides in part:
 "The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning regulations." C.G.S. 8-3.
During the commission's public hearing, no one mentioned or suggested any zoning regulation or regulations which the site plan violated. When the commission considered the application, there was no suggestion that the site plan "fail[ed] to comply CT Page 10551 with requirements already set forth in the zoning. . . . regulations." In the entire record returned by the commission, there is nothing even hinting that the commission denied approval of the site plan application because the site plan failed to comply with any provision(s) of the zoning regulations.
The defendant commission did not identify any "specific provisions of such regulations" or "requirements already set forth in the zoning . . . regulations" with which plaintiffs' site plan did not conform or comply.
Well after this appeal was filed and after much of the briefing in this case had occurred, the Supreme Court released its decision in TLC Development Inc. v. Planning Zoning Commission, 215 Conn. 527 (July 3, 1990). There, the defendant had denied site plan approval for a shopping center because of a perceived adverse effect on offsite traffic. The proposed use was a permitted use in the zone. The Supreme Court said:
 "Furthermore, with respect to the reasons based on offsite traffic considerations, the commission's decision was inconsistent with the fact that the plaintiff's application was already fully permitted under the Branford zoning regulations. This being the case, the result here comports with our earlier stated proposition: `The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district.' Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979)." TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 532-3 (1990).
Plaintiffs' proposed use of their property was a permitted use in the zone.
Unless the plaintiffs' site plan failed "to comply with requirements already set forth in the zoning . . . regulations," plaintiffs' application should have been approved. As stated above, the defendant commission did not cite any requirement or requirements of the zoning regulations which plaintiffs' plan violated.
Counsel for the defendant commission suggested during a chambers conference (February 21, 1991) and at the court hearing CT Page 10552 (August 29, 1991) that the plaintiffs' application did not comply with section 620 of the zoning regulations. That section provides:
 "SECTION 620 GUIDES TO THE COMMISSION IN CONSIDERING SITE PLANS
 In considering any site plan the Planning and Zoning Commission shall be guided by the following:
 1. The need for the proposed use in the proposed location.
 2. The existing and probable future character of the neighborhood in which the use is to be located.
 3. The location of main and accessory buildings in relation to one another.
 4. The height and bulks of buildings in relation to other structures.
 5. Traffic circulation within the site amount location, and access to parking and traffic load or possible circulation problems on existing streets.
 6. Availability of public sewer and water to the site and possible overloading of water and sewerage systems.
 7. Location and type of display signs and lighting, loading zones and landscaping and screening.
 8. Safeguards to protect adjacent property and the neighborhood in general from detriment."
 Plainville Town Planning and Zoning Commission Zoning Regulations, Section 620, p. 37.
Subsection 6, and perhaps subsection 8, at first blush might be grounds for holding that plaintiffs' site plan failed to comply with "[a requirement] already set forth in the zoning . . . regulations]" But on a closer look such a position is untenable, and for at least three reasons.
First, section 620, as its title suggests, does not contain "specific provisions of the regulations" or "requirements already set forth in the zoning . . . regulations." Rather, section 620 sets forth guides, not specifics, for the commission to follow when determining whether a particular proposed site CT Page 10553 plan complies "with requirements already set forth in the zoning . . . regulations."
Second, the provisions of section 620 are entirely lacking in definitive standards. Section 620 "does not provide any definitive standards for use in approving or denying site plans." Section 620 cannot be the basis for the commission's denial of plaintiffs' application. Kosinski v. Lawlor,177 Conn. 420, 423 (1979).
Third, section 620 directly contravenes the holding of TLC Development, Inc. v. Planning Zoning Commission, supra. Plaintiffs' proposed site plan set forth a use concededly permitted in the zone where the subject land was located. The defendant commission denied approval because the proposed use would "cause added drainage and flooding problems." However, the storm or surface water leaving the plaintiffs' property leaves by an underground pipe which empties into the town drainage system. That system's apparent inadequacy is the reason the defendant commission denied plaintiffs' site plan application. Since the proposed use was a use permitted in the zone, the defendant commission was precluded from making any "inquiry into its effect on . . . municipal services," including the town storm drainage facility.
The defendant commission conceded at the court hearing that the town drainage system was a "municipal service" as that term is used in TLC Development, Inc., supra. It follows that the defendant commission's stated reason for denying plaintiffs' application was improper and contrary to law.
The defendant commission contends that the holding of TLC Development, Inc. should not control this case. According to the commission, the inadequacy of the municipal drainage system is caused by the natural conditions in the area; the town's drainage piping empties into a natural system (Pequabuck River) which often cannot accommodate all the water from the town pipes and thus causes a back-up with resulting flooding in the area. See "Report on Hardwood Acres Drainage System," Defendant Commissions's Return of Record, Item 2, h. The defendant commission did not find that the "natural condition" was the cause of the inadequacy in the town drainage facility. But even if the commission had made that determination, it would not abrogate the holding of TLC Development, Inc. and/or its application to this case.
No other reason for denying the application is evident. It appears that the site plan meets all the requirements of the regulations. "If the plan submitted conforms to the regulations, the [commission] has no discretion or choice but to CT Page 10554 approve it. RK Development Corporation v. Norwalk, supra." Bossert Corporation v. Norwalk, 157 Conn. 279, 284 (1968). The site plan application must be approved.
In fairness to the commission, it should be noted that TLC Development, Inc., upon which the decision herein is based, was released well after the commission's action was taken. Furthermore, the commission acted in accordance with the then conventional and current practice.
TLC Development, Inc. was based on the Supreme Court's "earlier stated proposition: `The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district.' Beit Havurah v. Zoning Board of Appeals,177 Conn. 440, 443, 418 A.2d 82 (1979)." TLC Development, Inc. supra. Beit Havurah and TLC Development, Inc. involved site plans. The proposition/holding also applies to subdivision approvals. Sowin Associates v. Planning and Zoning Commission,23 Conn. App. 370 (September 23, 1990), certification denied,216 Conn. 832 (November 29, 1990). However, the "earlier stated proposition" of Beit Havurah was not the holding of that case. In fact, the "proposition" was stated there without citation of authority and was contained in a paragraph which stated what was not then in contention before the Supreme Court. The "earlier stated proposition" of Beit Havurah, which became the holding of TLC Development, Inc., was never cited or relied upon by a court in any reported case for the proposition until TLC Development, Inc., decided on July 3, 1990. During this eleven year interim, no officially reported case was based on the "earlier stated proposition" of Beit Havurah. And this even though there were cases which seemingly could have been decided on the "earlier stated proposition" of Beit Havurah but were not. See for example: Reed v. Planning Zoning Commission, 12 Conn. App. 153
(1987), 208 Conn. 431 (1988). In any event, the common practice even after Beit Havurah was for site plan and subdivision applicants to present and the appropriate authorities to consider the effect of a proposed site plan on traffic, municipal services, property values, and the general harmony of the district.
Plaintiffs' appeal is sustained; the defendant commission is directed to approve plaintiffs' site plan application.
BY THE COURT PARKER, J.