[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ISSUES
1. Can the defendant regulate the utilization of property by the plaintiff, a church, as a specially permitted use?
2. Was the defendant's decision, in upholding the Zoning Officer's cease and desist order, arbitrary, illegal or an abuse of discretion?
3. Was the defendant's decision, requiring the plaintiff to conform to the parking requirements of the zoning regulations arbitrary, illegal or an abuse of discretion?
4. Was the defendant's decision, in denying the plaintiff's application for variances, arbitrary, illegal or an abuse of discretion?
FACTS
This is an appeal taken by the plaintiff, Saint John's Christian Church (hereinafter "St. John's") from a decision by the defendant, the Zoning Board of Appeals of the City of Groton (hereinafter the "Board"). The Board's decision upheld the Zoning Officer's (hereinafter "Barnes") cease and desist order, held that St. John's must comply with the regulations concerning parking and also denied St. John's application for a variance. The following facts are taken from the Return of Record (hereinafter "ROR").
St. John's operates a church on 346 Shennecossett Road, Groton, Connecticut (hereinafter the "property"). (ROR, Exhibits 1; 6; 7; Transcript, pp. 55-57). The property is located in a RM (Multi-Family Residence) Zone. (ROR, Item #1, Transcript, p. 12). Kacey's Inc., a financial organization of CT Page 3352 the Knights of Columbus, is the owner of the property and in turn leases the property to St. John's. (ROR, Exhibit 1, p. 1, Transcript, pp. 19-23).
On November 16, 1991, Barnes inquired as to the use of the property as a church. (ROR, Exhibit 6, p. 1). Barnes, on the same day, replied that it was a violation of Groton Zoning regulations (hereinafter the "Regulations") for St. John's to operate a church on the property "until the issuance of a variance by the Zoning Board of Appeals and a special permit and site plan approval by the Planning and Zoning Commission. . . ." (ROR), Exhibit 6, p. 1). Subsequently, St. John's Church began to utilize the property (ROR, Transcript, pp. 19-21; see also Plaintiff's brief, p. 2). On February 5, 1991, Barnes, after observing numerous motor vehicles on the property, issued a cease and desist order to St. John's. (ROR, Exhibit 7, Transcript p. 6). On February 19, 1991, St. Johns, pursuant to General Statutes Section 8-7, appealed Barnes' cease and desist order and, also, filed an application for a variance from the regulations requiring special permit and site plan approval and conformance with parking requirements.
On March 26, 1991, a public hearing was held and St. John's withdrew the application for the variance. (ROR, Exhibit 4, Transcript, pp. 5, 11, 35-38). The Board reached its decision on April 23, 1991. (ROR Items # 2, 3, 5c). The Board's decision upheld the cease and desist order and denied the variance. (ROR Items # 4, 5). The decision was published in the New London Day on May 2, 1991. (ROR Item #4).
On May 16, 1991, St. John's served a copy of this appeal upon the Board. (Sheriff's Return). On May 22, 1991, St. John's filed this appeal with the court. A hearing was held on this matter before Judge Hurley on January 31, 1992. At that time, it was found that St. John's was an aggrieved party.
DISCUSSION
I. Timeliness
An appeal to the Superior Court "shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice was published as required by the General Statutes." General Statutes Section 8-8 (b).
Notice of decision was published on May 2, 1991 in the New London Day. (ROR Item, #4). Service was made on the Board by leaving process with the Groton City Clerk and the CT Page 3353 Chairperson of the Board on May 16, 1991. (Sheriff's Return). St. John's filed this appeal with the Superior Court on May 22, 1991.
The court finds that because the Board was served within fifteen days of May 2, 1991, the date of publication of notice, this appeal is timely.
II. Scope of Judicial Review
Judicial review of a zoning matter is limited in scope. Horn v. Zoning Board of Appeal of the City of Norwalk,18 Conn. App. 674, 676, 559 A.2d 1174 (1989). On appeal, a court will only disturb a commission's decision if the decision is found to be "unreasonable, arbitrary or illegal." Schwartz v. Planning and Zoning Commission of the Town of Hamden, 208 Conn. 146, 152, 543 A.2d 1339 (1988). The court must review the record to determine if the record supports the decision reached. Primerica v. Planning and Zoning Commission of the Town of Greenwich, 211 Conn. 85, 96, 558 A.2d 646
(1989). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Id. "The burden of proof to demonstrate that the Board acted improperly is upon the plaintiffs." Adolphson v. Zoning Board of Appeals of the Town of Fairfield, 205 Conn. 703, 707,535 A.2d 799 (1988).
III. Analysis
 A. Board's Power to Regulate the Use of Property as a Church
St. John's argues that the Board's action is an attempt to inhibit the exercise of religion. However, St. John's has failed to brief this issue. In its brief, the Board states that it has the power to require an institution to have a special permit in order to use property as a church.
Churches located in residential areas are subject to zoning regulations and can be required to obtain a special permit. The West Hartford Methodist Church v. Zoning Board of Appeals of the Town of West Hartford, 143 Conn. 263,121 A.2d 640 (1956); see also Daughters of St. Paul Inc. v. Zoning Board of Appeals of the Town of Trumbull, 17 Conn. App. 53,549 A.2d 1076 (1988). In determining whether the church should be granted a special permit two conditions had to be satisfied:
 1. "[If] the public convenience and welfare will substantially be served;
CT Page 3354
 2. The appropriate use of neighboring property will not be substantially or permanently injured."
The West Hartford Methodist Church v. Zoning Board of Appeals of the Town of West Hartford, supra, 267.
In applying this test, the West Hartford court upheld the denial of a special permit, because the construction of the church and parking lot would increase traffic while causing the loss of quiet and privacy. Id., 269.
St. John's relies upon Beit Havurah v. Zoning Board of Appeals of the Town of Norfolk, 177 Conn. 440, 418 A.2d 82
(1979). However, the Beit Havurah court dealt with a permitted use as of right and, therefore, specifically stated that it "need not consider the constitutional implications of special use permits for religious institutions." Id., 451.
St. John's has failed to meet the burden of proving the inhibition of the exercise of religion. St. John's has failed to demonstrate the inapplicability of zoning regulations to churches. Zoning regulations apply to churches and churches may be required to obtain special permits. Therefore, St. John's is required to obtain a special permit.
 B. Boards Decision to Uphold the Zoning Officer's Interpretation of the Regulations and the Cease and Desist Order
St. John's argues that the Board erred in upholding Barnes' interpretation that a church is required to apply for a special permit in the RM zone (Multi Family Residence Zone). St. John's asserts that a church is a permitted use under Regulation 2.51. This interpretation, was the basis for the cease and desist order. The Board, in its brief, argues that Barnes' interpretation was correct and that the church was required to obtain a special permit.
The pertinent portion of the Board's decision states:
 1. Upheld the Zoning Officer's decision dated 11/16/90, upheld his cease and desist order dated 2/5/91 and upheld the Zoning Officer's interpretation that a church is a special permit use in the RM Zone. . . .
(ROR Item, #4). CT Page 3355
The relevant sections are as follows:
 2.51 Permitted Uses [RM Zone] Any uses permitted in the R-5.2 Residence Zone, including Special Permit uses, subject to the same restriction and controls of the R-5.2 Residence Zone. (Emphasis added).
 2.41 Permitted Uses [R-5.2 Residence zones] a. One-family detached dwellings b. One-family semi-detached dwellings c. Two-family detached dwellings d. Parks and playgrounds e. Home occupations subject to the conditions set forth in section 4.13.
 2.42 Special Permitted Uses [R-5.2 Residence Zones] The following uses are permitted subject to Special Permit and Site Plan approval by the Planning and Zoning Commission: a. Church and places of religious worship. . . .
(ROR Item, #1 pp. 10, 12).
The Board, on this issue, in rendering its decision, did not give any reasons for its action. If the zoning authority does not state the reason for its action, the court must search and record to find the basis for the action taken. A. P. W. Holding Corporation v. Planning and Zoning Board of the City of Milford, 167 Conn. 182, 186, 335 A.2d 91 (1974).
Testifying before the Board, Barnes stated:
 My interpretation is that the land is located in a multiple family residential zone. Under the permitted uses it has specifics [sic] any use permitted in the R-5.2 zone, including special permit uses subject to the same restrictions and controls of the R-5.2 residence zone. . . .If we were here tonight acting on a two family detached dwelling, that would be a permitted use. Because it is a permitted use in the R-5.2 zone. However, we are here on a church, which in my opinion is a special permit use. . . . (Emphasis added).
CT Page 3356
(ROR, Transcript, pp. 47-48).
A permitted use in a RM Zone is allowed subject to the restriction and controls of the R-5.2 Residence Zone. A church is not a permitted use under a R-5.2 Residence Zone and is only allowed if there has been a special permit approval. Testimony to this effect was in the record before the Board. Accordingly, St. John's is required to have a special permit. The Board's decision, is supported by the record and is not arbitrary, unseasonable, illegal or an abuse of discretion.
 C. Was the Board Correct in Ruling that the Church Must Comply with Parking Regulations?
St. John's states that because a church is a permitted use, it need not conform to the zoning regulations. Also, St. John's claims that the prior use of the property (including parking) was no conforming, and as such, parking must be allowed to continue as a nonconforming use. The Board, in its brief, argues that the church is a new use and must, therefore, comply with the parking requirements of the zoning regulations.
The Board's decision states:
 1. The Board feels that there is a change in use which requires conformance with Section 4.3 of the Regulations.
(ROR, Item #4).
The relevant regulations states:
 2.47 Parking Requirements [R-5.2 Residence Zone]. Parking shall be provided in accordance with the requirements of Section 4.3.
 4.35 Size and Number of Spaces Off street parking spaces shall be provided for all new uses or buildings hereafter constructed, reconstructed, or enlarged in accordance with the following schedule of requirements:
USE SPACES REQUIRED
 e. Places of assembly 1 space for each including but not 4 fixed seats or CT Page 3357 limited to churches, equivalent gross auditoriums, theaters floor area. and stadiums.
 f. Food and beverage 1 space for each establishments 75 sq. ft. of including but not gross floor area. limited to Restaurants, taverns, bars, luncheonettes, soda fountains, clubs, (public and private), fraternal organizations and lodges.
(Emphasis added).
(ROR, Item #1, pp. 11, 47-48).
A change in character of a use constitutes an unlawful extension of a prior nonconforming use. Zachs v. Zoning Board of Appeals of the Town of Avon, 218 Conn. 324,331, 589 A.2d 351 (1991).
As stated earlier, St. John's is subject to the controls and restrictions of a R-5.2 Residence Zone. Therefore, St. John's is required to conform to the parking requirements of Section 4.3 of the Regulations. (See Regulations, Section 2.47, supra). Additionally, St. John's use of the property, as a church, is a change in the use of the property from the Knights of Columbus, a fraternal organization. (ROR, Transcript, pp. 19-20, 54-57; Regulations Section 4.35). As a change of use, St. John's is required to have its parking comply with Section 4.3 of the Regulations.
Accordingly, the Board's action was not unreasonable, arbitrary, illegal or in abuse of discretion.
D. Denial of the Variance
St. Johns asserts that the Board's denial of the variance was improper because the Board did not state reasons for its denial as required by General Statutes Section 8-7. The Board argues that the decision was correct, in light of the fact that St. John's withdrew the application for the variance at the hearing and also because St. John's failed to show any legal hardship.
General Statutes Section 8-6(3) states that the Board has the power to "determine and vary the application of CT Page 3358 the zoning bylaws, ordinances or regulations. . . ." General Statutes Section 8-7d states in part that "[t]he petitioner or applicant. . .may withdraw such petition, application, request or appeal."
St. John's withdrew its application for a variance at the time of the hearing. (ROR, Exhibit 4, Transcript, pp. 5, 11, 35-38). Because there was no application before the Board, the Board had no power to deny St. John's application for a variance and the Board's decision was, therefore, arbitrary and an abuse of discretion. Accordingly, St. John's appeal as to the Board's denial of the variance is sustained.
CONCLUSION
Churches are subject to zoning regulations. The Board's decision, to uphold the cease and desist order and to order compliance with the parking regulations, is not arbitrary, illegal, unreasonable or an abuse of discretion. Also, because St. John's application for a variance was withdrawn, the Board acted outside of its authority in denying a variance.
Accordingly, this appeal of the Board's decision is dismissed in part and sustained in part.
HURLEY, J.