AARON FRIEDMAN ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF ROCKY HILL (14389)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued February 18—decision released June 2, 1992

*Lewis K. Wise,* for the appellants (plaintiffs).
*Gordon T. Allen,* for the appellee (defendant).

COVELLO, J. This is an appeal from a decision of the Rocky Hill planning and zoning commission denying the plaintiffs' application for site plan approval of a proposed office building within the town. The issue presented is whether the commission could require the submission of an offsite traffic study as part of the site plan approval process. We conclude that within the framework of the applicable Rocky Hill zoning regulations, a traffic study is an appropriate ancillary submission. We therefore affirm the decision of the trial court that so held.

On September 7, 1989, the plaintiffs, Aaron Friedman and Dennis Angel, applied to the defendant, the Rocky Hill planning and zoning commission (commission), for approval of a site plan to erect a three story office building at 2009 Silas Deane Highway, Rocky Hill. The parcel in question is located within a commercial zone in which an office building is a permitted use. The commission denied the application citing the proposal's failure to comply with a number of the Rocky Hill zoning regulations.

The plaintiffs appealed to the Superior Court.[1] The court dismissed the appeal concluding that the plaintiffs' application had been incomplete in that it had not been accompanied by an appropriate, required traffic study. The Appellate Court granted certification to appeal placing in issue the question of whether the commission was precluded from weighing offsite traffic considerations and from requiring a traffic study as an incident to an application for a site plan approval.[2] We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

The plaintiffs first claim that the court erred in concluding that the commission could even consider offsite traffic issues in determining their site plan application. Specifically, the plaintiffs argue that since an office building was a permitted use in the zone in question, our holdings in *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 577 A.2d 288 (1990) (*TLC*), and *Beit Havurah* v. *Zoning Board of Appeals,* 177 Conn. 440, 418 A.2d 82 (1979) (*Beit Havurah*), precluded the commission's consideration of any offsite traffic matters. The plaintiffs contend that their failure to comply with the commission's regula-

[1] General Statutes § 8-8 provides: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located."

[2] The issues certified by the Appellate Court were: "1. Did the trial court err in upholding the decision of the Rocky Hill Planning and Zoning Commission ('Commission') denying the plaintiffs' application for site plan approval on the grounds that the plaintiffs had failed to submit a traffic study as required by the zoning regulations when that ground was not relied on by the Commission in denying the application? 2. Did the trial court err in holding that the Commission could legally require the submission of an offsite traffic study as part of the plaintiffs' application for site plan approval of an office building, even though the Commission is precluded from considering offsite traffic impacts under *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527 [577 A.2d 288] (1990), and *Sowin Associates* v. *Planning & Zoning Commission,* 23 Conn. App. 370 [580 A.2d 91 (1990), cert. denied, 216 Conn. 832, 583 A.2d 131 (1991)]?"

tions requiring submission of a traffic study was, therefore, irrelevant and could not serve as the basis for denying their application. We do not agree.

In *TLC* the Branford zoning regulations set forth a series of general objectives, one of which was entitled "Traffic and Pedestrian Access." *TLC,* supra, 530. The Branford regulations further provided that to assure the accomplishment of these general objectives, the " 'Commission . . . may require such *modifications* of the proposed plans as it deems necessary . . . .' " (Emphasis added.) *TLC,* supra, 530. We observed that the Branford zoning regulations make "it clear that the general objectives are to serve solely as the basis for requiring a *modification* of the proposed site plan" and concluded, therefore, that "offsite traffic considerations should not have served as the basis for *denying* the plaintiff's site plan application." (Emphasis added.) *TLC,* supra, 532. Thus, in *TLC,* it was the language of the Branford zoning regulations itself that established the proposition that offsite traffic considerations only served the limited purpose of requiring a modification to the site plan and could not serve as the basis for denying the application altogether.

Our conclusion in *TLC,* that offsite traffic considerations might have only a limited role in the review of site plan applications, comported with an earlier instance in which we concluded that traffic studies had only a limited applicability in determining a general land use. In *Beit Havurah,* supra, an existing Jewish synagogue that lay within a zone that permitted churches, sought unrestricted overnight accommodations as a permitted accessory use. In dicta, we stated that "[t]he designation of a particular use of property as a permitted use [e.g., a church,] establishes a conclusive presumption that such use [e.g., church use,] does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services,

property values, or the general harmony of the district." *Beit Havurah,* supra, 443. We hastened to add that, "[a]lthough property whose use constitutes a permitted use is not immune from regulation under the laws of nuisance or other applicable statutes such as those relating to public safety, no violation of any such laws has been alleged." *Beit Havurah,* supra, 443.

Thus, *TLC* and *Beit Havurah* serve to illuminate two propositions with respect to the role of traffic considerations in weighing site plan applications. First, the language of a given zoning regulation may, by its textual content, limit the scope of the use of traffic considerations. Second, once a zoning authority establishes that a particular use within a zone is permitted, e.g., an office building or a church, a conclusive presumption arises that such a use in general, does not adversely affect the traffic within the zone. Neither of these tenets, however, precludes an examination into the special traffic consequences of a given site plan when the applicable zoning regulations permit it.

In the present instance, the erection of an office building within a commercial zone under the Rocky Hill zoning regulations was "permitted subject to Site Plan Approval in accordance with Section 9.4." Unlike the Branford regulations in *TLC,* § 9.46 is not entitled, "Criteria that may necessitate *modification,*" but rather is entitled, "Criteria for *Approval.*" (Emphasis added.) Section 9.46 contains an entire section dealing with traffic and specifically requires a traffic study addressing the impact of the proposed development upon the street system in the area.[3] As is appropriate

___

[3] Rocky Hill zoning regulations § 9.46.d provides: "Traffic.

"a. Ease of entrance to, and exit from the development, with a minimum of disturbance to outside traffic flow shall be considered of prime importance.

"b. Entrances and exits shall be located either at an existing intersection or a minimum of 50 feet from an intersection.

in such regulations, § 9.46 does not deal with general matters such as the volume of traffic that might be generated by an office building, but rather with specific issues such as the placement of entrances and exits in order to disturb arterial traffic minimally and provisions to minimize the impact of traffic on nearby residential areas. It is reasonable to conclude that a commission regulation dealing with the placement of entrances and exits so as to minimize the disturbance of existing traffic flow could require, as a predicate, a traffic study concerning the existing streets so that both the applicant and the commission would know what volumes of traffic were likely to be disturbed by the proposed use.

General Statutes § 8-3 (g) provides: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building . . . with specific provisions of such regulations. . . . A site plan may be modified or *denied* only if it fails to comply with requirements already set forth in the zoning . . . regulations." (Emphasis added.) The Rocky Hill zoning regulations required that a traffic study accompany any application for site plan approval. Since the site plan submission did not com-

"c. No exit or entrance shall exceed a grade of three percent within 25 feet of any street line nor eight percent at any other point.

"d. Consideration shall be given to the inclusion of arterial thru-streets with proper provisions made to minimize the effects of traffic through residential areas. *In all cases, a traffic study shall be prepared by a licensed Professional Engineer addressing the impact of the development upon the street system in the area.*

"e. The interior traffic circulation pattern shall be safe and aesthetically in harmony with the stated objectives of the district. Design items to consider in laying out the interior system shall include:

"(1) Work with, not against the topography;

"(2) Utilize curves to break up the monotony of straight drives;

"(3) Separate pedestrian and vehicular traffic where possible." (Emphasis added.)

ply with the requirements set forth in the zoning regulations, the court correctly concluded that the failure to supply the required traffic study furnished an adequate legal basis for the commission's decision to deny the application.

The plaintiffs further argue, however, that the commission never referred specifically to the failure to submit the required traffic study as the reason for its disapproval. The plaintiffs claim, therefore, that the court erred in adopting as the basis for its conclusion, a reason not relied upon by the commission.

"In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 267–68, 196 A.2d 758 (1963).

While the court may not substitute its judgment for that of the commission, if it concludes that any one of several reasons submitted by the commission for its action is reasonably supported by the record, then the commission's actions must stand. *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 94, 368 A.2d 24 (1976). While there is no talismanic reference to the specific section of the zoning regulations requiring a traffic study, the record of the commission's decision makes it perfectly clear that a shortage of information concerning traffic was a significant factor in its decision. The commission stated: "While it is not proposed that there be no access from the site to Parsonage Street, the testimony of the applicant's engineer, who is not a traffic engineer, that all traffic will use the Route 99 (Silas Deane) entrance is not believed." The commission further stated: "The proposal is not in com-

pliance with section 9.46.a (3)[4] of the Regulations in that no or insufficient information was submitted as to the capability of the adjacent collector street, Parsonage Street, or its feeder streets to handle the projected traffic volume. Parsonage Street adjacent to the site has a Level F. traffic flow at its intersection with Route 99 during peak hours." Thus, we conclude that the commission adequately expressed as one of the reasons for its disapproval of the plaintiffs' application, the absence of the required traffic data that the traffic study would have supplied.

The judgment is affirmed.

In this opinion the other justices concurred.

[4] Rocky Hill zoning regulations § 9.46.a (3) provides: "Appropriateness of Location or Use Relative to . . . (3) The capability of adjacent and feeder streets to accommodate the projected traffic volumes."