[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Newington Town Plan and Zoning Commission ("Commission") denying an Application for Site Plan Approval made by the plaintiff Newington Properties Limited Partnership. The property is in the Town of Newington, at the southeast corner of the intersection of Connecticut Route 15, commonly known as the Berlin Turnpike ("Turnpike"), and Prospect Street ("Prospect"), also known as Route 287.
The site in question is the proposed location of a Wal-Mart store. After extensive hearings extending over a period of five months, and after plaintiff's numerous modifications of the original site plan application in response to concerns raised by the Commission, the Commission voted 6-1 to reject the site plan application, for reasons principally concerning traffic and safety. This appeal followed. CT Page 4112-DD
The following undisputed facts give rise to this appeal. In November, 1994, the plaintiff filed an application requesting the Commission to approve its site plan for the development of a Wal-Mart store on approximately 14 acres of property. The site is located in the B-BT Business, Berlin Turnpike Zone. A retail store such as a Wal-Mart is a permitted use in the B-BT Zone. In support of its application, the plaintiff submitted a series of reports, including a traffic analysis, prepared by its experts. The Commission retained its expert traffic engineer to likewise prepare a traffic study.
Under the site plan, access to Wal-Mart would be via Prospect Street, an east-west road that intersects the Berlin Turnpike, which runs in a north-south direction. At the point where it intersects the Turnpike, Prospect Street is on a steep grade, prompting a number of traffic safety concerns by the Commission. In addition, the site plan provided for only one entrance to and from Prospect Street, also raising concerns about access to the area by emergency vehicles in the event the single entrance and exit way were obstructed by an accident.
Beginning in January, 1995, and extending through April, 1995, the Commission conducted a series of hearings on the plaintiff's application. Although these hearings generally addressed questions and concerns regarding: (1) traffic volume and flow and related safety concerns; (2) buffers; (3) lighting; and (4) parking, the principal focus of the Commission was on traffic related safety issues. Specifically, throughout the hearings, the Commission expressed concerns about: (1) the safety of vehicles entering Prospect Street from the southbound Turnpike; (2) access by emergency vehicles to the site itself from a single driveway; (3) circulation problems posed by the sheer volume of traffic generated by the Wal-Mart; and (4) backup of traffic on the Turnpike itself and adjacent streets as a result of the increased volume of traffic.
In response to these concerns the plaintiff agreed to make the following modifications to the site plan:
(1) Construct a second left hand turn from the Turnpike southbound onto Prospect Street;
(2) Install a traffic light at the site driveway on Prospect; CT Page 4112-EE
(3) Locate the site driveway further to the east of the Turnpike to prevent the backup of vehicles between the site driveway and the turnpike;
(4) Lower the grade of Prospect;
(5) Add additional lanes in both directions on Prospect;
(6) Line up the driveways on Prospect to permit the installation of a traffic light at the site driveway;
(7) Widen the site driveway and construct a median to allow access by emergency vehicles.
In response to these changes, the Commission's own traffic expert indicated that the plaintiff had complied with virtually all of the requests for modification suggested by him and the Commission. Nevertheless, the Commission's expert noted his continuing concern that the configuration of the site permitted only one site driveway, and that the heavy volume of traffic entering Prospect Street from the Turnpike and other adjacent streets posed significant safety concerns.
In April, 1995, after receipt of all of the evidence, the Commission voted to deny the application by a 6-1 vote. During the Commission's deliberations, Commissioner Patel disclosed that "over the last many days I received a lot of correspondence from people complaining about the development, etc." Noting that because the matter involved a site plan application and therefore no public hearing was held, Commissioner Patel indicated, "When [commercial properties] are zoned for a specific use, irrespective of the density of the development you are forced to or basically you are left with no choice but to act based on site plan presentation. And as a result unfortunately many of you [the public] were unable to give your input. Not that many of us have not received the signals what people feel." None of the correspondence referred to by Commissioner Patel was made part of the record, nor otherwise shared with the other Commissioners.
The Commission rejected the plaintiff's application by a 6-1
vote. The Commission specifically relied on Newington Town Zoning Regulations § 5.3.3(B). In its letter of denial the Commission identified six specific traffic concerns, principally involving offsite traffic issues: CT Page 4112-FF
 A. The amount of traffic, estimated at 750
vehicles at Friday peak hour and 1000
vehicles at Saturday peak, will result in back up along the Berlin Turnpike at Prospect Street, at the proposed site driveway and at Back Lane, and adjacent residential collector streets serving neighborhood in Newington and Wethersfield.
 B. The location of the development adjacent to Prospect Street will pose difficult and unsafe traffic on a roadway with a grade in excess of 7% for a distance of approximately 175' that is frequently hazardous to drive during winter storms.
 C. The access to the proposed site will be by single driveway which will serve both truck and passenger car use. With parking planned for 562 cars, a safer site design should be dual access points that would divide traffic and provide for a secondary functional year-round drive in the event of an emergency.
 D. The traffic coming to this site from the south bound Berlin Turnpike lanes, projected at 39 percent, will arrive via dual left turn movements up Prospect Street which could result in unsafe weaving of vehicles into the site driveway.
 E. The traffic hazards and circulation problems on the Turnpike at Prospect Street, Prospect and the site drive, and Prospect and Back Lane will cause delays in emergency service response time to Newington residents living east of the Berlin Turnpike because Back Lane is the only public street which services the 110 homes in this section of Newington.
 F. The traffic information submitted by the applicant has failed to analyze the traffic impacts of the proposed retail development on CT Page 4112-GG Town streets at the intersection of Kitts Lane and East Robbins and East Robbins and Goodale Drive.
(Emphasis in original).
In this appeal the plaintiff alleges that the Commission's decision is illegal because: (1) the Commission does not have discretion to deny a site plan application for a use permitted by the zoning regulations; (2) the Commission is not permitted to rely on off site traffic considerations as the basis for denying a site plan; (3) § 5.3.3 of the Town Zoning Regulations, which was the basis of the denial, is impermissibly vague; (a) the Commission's decision is not supported by substantial evidence; and (5) Commissioner Patel improperly considered the correspondence sent to him by local residents.[1]
The role of traffic considerations in the review of site plans has been the subject of two recent Supreme Court decisions. In the first case, TLC Development, Inc. v. Planning and ZoningCommission, 215 Conn. 527 (1990), the Supreme Court concluded that the Branford Zoning Commission erred by denying a site plan application based on traffic considerations when the terms of the Branford regulations only permitted the modification of the application based on the traffic considerations identified in the regulations. (Emphasis supplied). In its ruling in TLC, the Court reaffirmed its earlier decision in Beit Havurah v. ZoningBoard of Appeals, 177 Conn. 440, 443 (1979) that "[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." TLC Development, Inc. v.Planning Zoning Commission, 215 Conn. at 532-33.
In the subsequent case of Friedman v. Planning and ZoningCommission, 222 Conn. 262 (1992), the Court explained its decision in TLC and Beit Havurah:
 TLC and Beit Havurah serve to illuminate two propositions with respect to the role of traffic considerations in weighing site plan applications. First, the language of a given zoning regulation may, by its textual content, limit the scope of the use of CT Page 4112-HH traffic considerations. Second, once a zoning authority establishes that a particular use within a zone is permitted, e.g., an office building or a church, a conclusive presumption arises that such a use in general, does not adversely affect the traffic within the zone. Neither of these tenets, however, precludes an examination into the special traffic consequences of a given site plan when the applicable zoning regulations permit it.
222 Conn. at 266. (Emphasis supplied.) Because the regulations at issue in Friedman were entitled "Criteria for Approval", unlike those in TLC, which were captioned "Criteria That May Necessitate Modification", the Court concluded that the zoning commission in Friedman was authorized by the regulations themselves to reject the site plan based on the specific traffic criteria enumerated in the Rocky Hill regulations.
Based on TLC and Friedman, the following principles determine the extent to which a local zoning commission may consider traffic concerns in reviewing a site plan. As a general proposition, if a use is permitted within a zone, a conclusive presumption arises that such use does not adversely affect the traffic within the zone. Nevertheless, the language of a given zoning regulation may, by its terms, permit an examination into the specific traffic consequences of a given site plan. Finally, if the regulations do permit such examination, the terms of the regulations themselves determine whether the commission is empowered to deny or merely modify the site plan in accordance with the considerations set forth in the regulations.
A review of the applicable Newington Regulations indicates that the Commission is authorized to take into account traffic considerations when reviewing a site plan, and that failure to satisfy the traffic requirements set forth in the Regulations may serve as the basis for denying a site plan application.
First, § 5.3.2 provides that the "site plan shall beapproved, denied, or approved with modifications with the standards and conditions contained in these regulations" (emphasis supplied). Plainly, in accordance with Friedman v.Planning and Zoning Commission, supra, the terms of the regulations themselves empower the Commission to either approve, CT Page 4112-II modify or deny a site plan notwithstanding the fact that the property in question is a permitted use within the zone.
Second, § 5.3.3 B. sets forth the traffic related considerations that govern the Commission's site plan review. "In reviewing site plans, the Commission shall consider the following, as well as the conditions and standards herein . . . Traffic circulation within the site; amount, location and access to parking; traffic generated and possible traffic hazard or circulation problems on existing or proposed drives or streets." Under this provision the Commission is required to consider the volume of traffic and any hazard posed by such traffic both on and off site. Because the Regulations themselves specifically mandate that the Commission consider on and off site traffic hazards, the plaintiff's reliance on TLC Development,Inc. v. Planning and Zoning Commission, is misplaced. The rule of TLC, as clarified by Friedman, is that a zoning commission's authority to consider on or off site traffic issues in the course of site plan review is a function of the regulations themselves. In this case, the Newington regulations not only authorize, but mandate, that the Commission consider "possible traffic hazard or circulation problems on existing or proposed drives or streets." Therefore, as part of its site plan review, it was not error for the Commission to evaluate, in accordance with the criteria set forth in § 5.3.3.B., potential off-site traffic problems emanating from the proposed site plan.
The plaintiff next argues that even if the Commission were authorized to consider off site traffic issues as part of its site plan review, § 5.3.3.B. is impermissibly vague and therefore cannot serve as a basis for rejecting the site plan. In support of its argument the plaintiff relies on Barberino Realty Development Corp. v. The Planning Zoning Commission, 222 Conn. 607
(1992). In that case the Court stated that "a commission's regulations must be reasonably precise in the subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations. . . . [V]ague regulations which contain meaningless standards lead to ambiguous interpretations in determining the approval or disapproval of different subdivisions. Adequate, fixed and sufficient standards of guidance for the commission must be delineated in its regulations so as to avoid decisions, affecting the right of property owners, which would otherwise be a purely arbitrary choice of the commission; such a delegation of arbitrary power is invalid." 222 Conn. 618-19. CT Page 4112-JJ
In Barberino, the regulation in question required that the commission provide "adequate safeguards" for the protection of over properties and provide for "adequate" traffic circulation and parking. The Court rejected the applicant's claim that these standards were impermissibly vague, noting that "the burden of showing that regulations are unconstitutionally vague rests with the plaintiff [and that] the plaintiff is required to show that the regulation complained of is impermissibly vague as applied to the facts of the particular case." Id, 620.
In this case, § 5.3.3.B requires the Commission to "consider traffic circulation within the site; amount, location and access to parking; traffic generated and possible traffic hazard or circulation problems on existing or proposed drives or streets." These standards are sufficiently precise to withstand plaintiff's claim. If the Barberino standard of "adequate" traffic circulation and parking is not impermissibly vague, then the more detailed standards set forth in § 5.3.3.B. — which require consideration of "possible traffic hazard or circulation problems on existing or proposed drives or streets" — are not subject to a vagueness challenge.
Further, as pointed out in Barberino, the plaintiff has the burden of demonstrating that § 5.3.3.B. is "impermissibly vague as applied to the facts of the case." Id. 620. The plaintiff has not met that burden. The Commission cited six reasons for denying the plaintiff's application, all of which made specific reference to traffic hazards and/or circulations problems that it identified. Indeed, the Commission's written decision specifically tracks the criteria set forth in § 5.3.3.B., and identifies with particularity the deficiencies in the plaintiff's application that the Commission concluded justified its denial. Under these circumstances the plaintiff has not satisfied its burden of proving that the Regulations in questions are impermissibly vague.
Having determined that the Regulations permit the Commission to consider off site traffic concerns and that the Regulations are not impermissibly vague, the next question is whether the Commission's decision to deny the site plan is supported by the record. It is axiomatic that on appeal the issue is whether the zoning commission's decision on factual issues is reasonably supported by the record, in which case the court should not substitute its judgment for that of the commission. Goldberg v.CT Page 4112-KKZoning Commission of Town of Simsbury, 173 Conn. 23 (1977). Where an administrative agency denies an application and gives reasons for its action, the question on appeal is whether the evidence in the record reasonably supports the agency's action, and the court cannot substitute its judgment for as to the weight of the evidence for that of the agency. Id. The settled standard of review of questions of fact is that a court may not substitute its judgment for that of a zoning authority as long as it reflects an honest judgment reasonably exercised. OakwoodDevelopment Corporation v. Zoning Board of Appeals, 20 Conn. App. 458
(1990).
As previously noted, the Commission's decision was based on six findings: (1) the increased volume of traffic will result in backup along the Berlin Turnpike, Prospect Street, at the site driveway and adjacent streets; (2) the site location on Prospect Street will create unsafe traffic conditions due to the grade of Prospect Street; (3) the access to the proposed site by a single driveway is not as safe as a dual access layout; (4) access to Prospect Street via a dual left hand turn from the Berlin Turnpike could create unsafe weaving; (5) the increased volume and attendant circulation problems may create delays in the response time of emergency vehicles to residential areas contiguous to the site; and (6) the applicant failed to provide a traffic analysis of the traffic impact on East Robbins and two intersecting streets.
The Commission had before it extensive evidence regarding the impact of the site plan on traffic and safety, including two expert reports, one submitted by the applicant, the other prepared for the Commission. Notwithstanding the obvious good faith efforts of the applicant to address the many safety concerns raised by the commission and its expert, the commission's decision reflected the continuing concerns of its expert that even those modifications were not sufficient to address the traffic and safety issues raised by him. While others might well reach a different conclusion based on the same evidence, the Commission's decision is reasonably supported by the record. A review of the Commission's findings and the evidence upon which it is based reflects that its decision "reflects an honest judgment reasonably exercised." Id.
The final claim raised by the plaintiff is that Commissioner Patel received and considered ex parte communications from citizens opposed to the application. Commissioner Patel CT Page 4112-LL described those communications as a "lot of correspondence from people complaining about the development." Although the correspondence itself was not made a part of the record, the plaintiff acknowledges that there is no evidence suggesting that the Commissioner initiated contact with the public or otherwise solicited public comment on the application. Nor is there any evidence suggesting that the correspondence contained substantive information pertaining to traffic issues or any of the other site plan considerations before the Commission.
It is unquestionably true that it is improper for a Commission to receive ex parte evidence after the close of a public hearing without giving opponents an opportunity to inspect and question it and offer evidence in rebuttal. Parish ofSt. Andrew's Church v. Zoning Board of Appeals of Stamford,155 Conn. 350 (1967). Fuller, Land Use Law and Practice, § 47.4. Improper receipt of such evidence, however, does not require automatic reversal of the agency decision. "In the context of ex parte communications, the appropriate inquiry regarding prejudice to the appellant's right must focus on whether the agency's decision making process was irrevocably tainted so as to make the ultimate judgment of the agency unfair. Such a determination necessarily involves consideration of the role the ex parte communication played in the agency's decision." Martone v.Lensink, 207 Conn. 296, 306 (1988). When a party submits ex parte evidence to the decision maker a rebuttable presumption of prejudice to the applicant arises. (Emphasis supplied). The burden of disproving prejudice rests with the party submitting the ex parte evidence. Id.
In this case it was not a party, but members of the public, who submitted correspondence to the Commissioner. The Supreme Court has concluded that claims involving ex parte communications generated by members of the public may be resolved on the record without a hearing. Nielsen v. Zoning Board of Appeals, 152 Conn. 120,123 (1964). ("We do not think on the record before us, the ruling of the board should be voided for impropriety although we strongly condemn the misguided zeal of those who sought to communicate with one of its members.") See, also, First HartfordRealty Corporation v. Plan Zoning Commission, 165 Conn. 533, 545
(1973) ("Even if the reception of the evidence was illegal — a question we do not decide — it was at most harmless error because the action of the commission is adequately supported by assigned reasons not based on the allegedly tainted evidence"). CT Page 4112-MM
In this case there is nothing before the court to indicate either that Commissioner Patel initiated contact with members of the public or that the correspondence received by him tainted the proceedings before the Commission. Further, there is ample evidence in the record, independent of the contested correspondence, to support the Commission's decision to deny the plaintiff's site plan application. Id. While the "misguided zeal" of those who contacted Commissioner Patel is highly inappropriate, requiring his automatic recusal, as suggested by the plaintiff, would encourage the anomalous situation of allowing opponents of an application to contrive to remove a commissioner perceived unfavorable to their position simply by communicating with the commissioner ex parte.
Accordingly, for the foregoing reasons, the plaintiff's appeal is dismissed.
SO ORDERED.
Robert L. Holzberg, J.