[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION Statement of the Case
The plaintiff, Apple East, Inc. (hereinafter "Apple East"), is appealing the denial of its application to modify the existing Planned Development District (PDD) #2 by the defendant, the Shelton Planning Zoning Commission (hereinafter "Commission").
 History and Facts
On August 12, 1980, the Commission approved the creation of CT Page 11249 the Planned Development District #2 in the city of Shelton. In July, 1992, and August, 1997, modifications to the PDD were approved. The latter modification, relevant to the present appeal, allowed the construction of a 24, 615 square foot retail store (the Staples property) and an adjacent 8,435 square foot retail building. Subsequent to that modification approval, Apple East sought the Commission's approval in building an Applebee's restaurant in the area adjacent to Staples. (Return of Record [ROR.], P, Transcript [T.], pp. 4-5.) The Commission denied this application, specifically citing problems with traffic, architecture and inconsistency with the PDD as the reasons for the application's denial. (ROR P; Plaintiff's Memorandum of Law.)
On April 7, 1998, Apple East filed a new application to build an Applebee's restaurant near the Staples store. (ROR, A.) Unlike the original application, the renewed application sought a smaller, free-standing building that would not be connected with the Staples building. (ROR A; B.) In light of the Commission's comments regarding the original application, Apple East modified its previous application in several aspects in an attempt to conform to the Commission's comments in regards to the original application. (ROR A; P.) Nevertheless, the Commission denied Apple East's application on July 14, 1998, with the notice of decision being published on July 21, 1998. (ROR M; N; O.)
On August 3, 1998, Apple East commenced this appeal by serving the appeal and citation on the defendant. Apple East filed a memorandum of law in support of his appeal on January 29, 1999 and the defendant responded with a memorandum of law filed on March 5, 1999. The return of record was filed on October 21, 1998 and supplemented on March 26, 1999. An administrative appeal hearing was held before the court, Grogins, J., on April 26, 1999.
 Jurisdiction
A. Aggrievement.
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). Apple East alleges that it is aggrieved by the decision of the Commission "because he was the applicant seeking to construct and operate a restaurant upon the premises and his application has been denied." (Complaint, par; CT Page 11250 4.) Furthermore, in its memorandum of law in support of the appeal, Apple East maintains that it is aggrieved because it is a lessee which is in control of the property and has a future right of possession consistent with the ownership of the property.
Classical aggrievement consists of a two-part test. "First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest . . . Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . ."Connecticut Resources Recovery Authority v. Planning ZoningCommission, 225 Conn. 731, 739 n. 12, 626 A.2d 705 (1993). "The presence of aggrievement is an issue of fact to be determined by the trial court on appeal." Primerica v. Planning ZoningCommission, 211 Conn. 85, 93, 558 A.2d 646 (1989).
To show that a nonowner is aggrieved, the court must examine a variety of factors specific to the facts of each case, such as "whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property." R R Pool Home, Inc. v. ZoningBoard of Appeals, 43 Conn. App. 563, 572, 684 A.2d 1207 (1996). Lessees have previously been found to be aggrieved parties. SeePrimerica v. Planning Zoning Commission, supra, 211 Conn. 94;Automated Container Recovery v. Berlin Planning Commission, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 462678 (December 8, 1994, Kremski, J.T.R.); See also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 32.5, pp. 538-39.
In the present case, Apple East's application to modify the existing PDD has been denied by the board. As such, Apple East, to its detriment, was not permitted to construct and operate a restaurant on the premises in question. The court's notes from the hearing indicate that aggrievement was not contested. Thus, the court finds that Apple East was a lessee, and the court finds the plaintiff aggrieved for purposes of the appeal.
B. Jurisdiction
General Statutes § 8-8(b) provides, in part, that an "appeal CT Page 11251 shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
In the present case, the notice of the Commission's decision was published on July 21, 1998. (ROR, N.) According to the sheriff's return, the town clerk was served with the appeal and citation on August 3, 1998, and the Chairman of the Commission was served with the appeal and citation on August 5, 1998. (Sheriff's Return.)
Accordingly, the appeal was timely commenced upon the proper parties and the court has jurisdiction over the appeal.
 SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether "the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion. . . ." (Citations omitted.) Smith v. Zoning Board ofAppeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied,114 S.Ct. 1190 (1993). "The burden of proof is on Apple East to demonstrate that the commission acted improperly." Spero v. Boardof Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." (Brackets in original.) WestHartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498, 514, 636 A.2d 1342 (1994). "The reviewing court ought only . . . determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . ." Id., 514-15. Where an administrative agency gives reasons for the denial of a land use application, the denial must be upheld if even one of the reasons given is sufficient to support it. Frito-Lay, Inc. v. Planningand Zoning Commission, 206 Conn. 554, 576, 538 A.2d 1039 (1988) (special permit); Burnham v. Planning Zoning Commission,189 Conn. 261, 265, 455 A.2d 339 (1983) (zone change). "If any of the reasons supports the action of the commission, the plaintiff must CT Page 11252 fail in his appeal." Goldberg v. Zoning Commission, supra, 26.
The Commission denied Apple East's application, stating the following reasons: "a) Based on their own experiences and observations, the Commission has grave concerns and is not convinced that the site access and egress conditions and the peak parking demands anticipated from the proposed restaurant can be accommodated without safety problems, congestion and other adverse impacts on Bridgeport Avenue. Parking issues will become particularly acute if the low parking demands of the office supplier were replaced by the higher demands of a more active retail establishment. The applicant has not adequately responded to suggestions for interconnected facilities and/or elimination of the Bridgeport Avenue exit drive; b) The colorful awnings, characteristic logo/signage, lighting and similar accessory features of the modified architectural design for the second free-standing building are inconsistent with the existing building and; c) The proposed modification of Detailed Development Plans and the change of use are not consistent with the earlier representations that formed the basis of the original approval of this portion of P.D.D. #2."
Apple East appeals the decision of the Commission on the grounds that 1) the Commission's stated reason for denial are not supported by the record, are erroneous and are arbitrary and capricious; 2) the Commission exceeded its statutory powers; 3) the Commission failed to approve an application which conforms to the Commission's regulations and; 4) the Commission denied the application based on factors not contained in the regulations. Apple East argues that the Commission was acting within its administrative capacity and therefore had no independent discretion beyond determining whether the plan complies with the applicable regulations.
Specifically, Apple East argues that the Commission should not have even considered traffic issues as the proposed restaurant was a permitted use and thus carried with it a conclusive presumption that traffic would not be affected adversely. Moreover, Apple East argues that, even if the Commission was able to consider traffic, the record does not support a conclusion that the restaurant would adversely impact traffic. Apple East also argues that the denial of the application on the ground of aesthetics was in error because the zoning regulations do not contain any precise restrictions in regards to the aesthetics of buildings and thus cannot be used as CT Page 11253 the basis for the denial of the application. Finally, Apple East argues that the Commission was in error in holding that the present application was inconsistent with the original application. Accordingly, Apple East argues that the proposed modification of a retail" use to that of "restaurant" use should not make a material difference as both are permitted in the PDD #2.
The defendant disputes Apple East's analysis of the Commission's duty in regards to the proposed modification to the PDD. The Commission argues that the proposed modification to the PDD is not just a site plan application, but rather requires amendments to zoning regulations. As such, the defendant argues that the Commission is entitled to the full panoply of its powers and thus may consider the impact on traffic. Even if the Commission is limited to an administrative review of the proposed modification, the defendant argues that it still may consider the special traffic consequences of the proposed restaurant application and rebut the presumption that a permitted use within a zone will not have an impact on traffic. The defendant also argues that under the PDD standards set forth in the Shelton regulation, it may consider the aesthetic quality of the proposed restaurant.
A planned development district (PDD) has been called "a creature not normally spotted in Connecticut's jurisprudential forests." Eco Industries, Inc. v. Executive Monarch Hotel, Inc.,4 Conn. App. 659, 662, 496 A.2d 233 (1985). At least one judge of the Superior Court, however, has reasoned that the PDD is analogous to the application for a site plan or special permit (or special exception). Mileski v. Planning Zoning Commissionof the City of Shelton, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 030284 (July 24, 1990, Fuller, J.) (comparing PDD application to a site plan application, or a special permit application, but, however, emphasizing the inability to identify "exactly what type of zoning approval a PDD is or the statutory authority for it"). Another Superior Court case, using the reasoning of Mileski as a basis, has held that an application for an amendment to the detailed development plans for a PDD is also analogous to a site plan application or special permit application. People's Bank v.Planning Zoning Commission, City of Shelton, Superior Court, judicial district of Ansonia/Milford at Derby, Docket No. 050148 (February 7, 1996, Sylvester, J.). Thus, from the courts' discussions and observation in both Mileski and People's Bank, it CT Page 11254 appears that this court's analysis of the present appeal must turn to standards that pertain to the granting of a special permit or site plan.
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity."Irwin v. Planning Zoning Commission of the Town of Litchfield,244 Conn. 619, 626, 711 A.2d 675 (1998). "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . ." (Citations omitted.) Id. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal . . ." (Citations omitted.) Id. "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing." Id.
General considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. Whisper WindDevelopment Corp, v. Planning Zoning Commission, 229 Conn. 176,1777, 640 A.2d 100 (1994). "[B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood." Barberino Realty Development Corp. v. Planning Zoning Commission, 222 Conn. 607, 613, 610 A.2d 1205 (1992).
"Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, it can no longer deny the CT Page 11255 application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it." Irwin v. Planning Zoning Commission of the Town of Litchfield, supra,244 Conn. 628.
In the present case, Apple East, relying on Beit Havurah v.Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979) and TLC Development, Inc. v. Planning Zoning Commission,215 Conn. 527, 577 A.2d 288 (1990); argues that the Commission improperly considered off-site traffic in denying the application.
With respect to Beit Havurah, the court stated that "the designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." Beit Havurah v. ZoningBoard of Appeals, supra, 177 Conn. 443. In TLC the court, relying on Beit Havurah, upheld the trial court's sustaining an appeal where the trial court found that the commission improperly denied an application based on traffic considerations. Accordingly, Apple East argues that since the proposed modification of the PDD calls for a permitted use, a restaurant, the defendant improperly denied the application based on considerations of traffic that were beyond the scope of the Commission's review.
Apple East's argument, however, is without merit. In Friedmanv. Planning Zoning, 222 Conn. 262, 266, 608 A.2d 1178 (1992) the court clarified the holdings in Beit Havurah and TLC and stated that neither of the tenets announced therein "precludes an examination into the special traffic consequences of a given site plan when the applicable zoning regulations permit it." In the present case, the zoning regulations applicable to the PDD clearly state that the Commission may consider traffic consequences in approving a PDD. (Supplemental Return of Record [SROR], A, Shelton Zoning Regulations §§ 34.5.2e, 34.8.) Similarly, these considerations are also valid in the present case where the Commission is faced with an application to modify PDD #2. The PDD is established as a unit and any integral change should be considered in the context of the whole unit and the applicable regulations to the formation of that unit. (SROR, A, Shelton Zoning Regulations § 34.1.) CT Page 11256
The question before the court, accordingly, is whether the record contains substantial evidence to warrant the Commission's denial of Apple East's application to modify the PDD based on traffic considerations.
Included in the record is a traffic study commissioned by Apple East after the original application was denied. (ROR, K.) This study concludes that the proposed restaurant would have a minimal impact on traffic in the area and would not adversely affect the existing parking situation. (ROR, K, pp. 24-25.) Despite the conclusion of this traffic study, the Commission, nonetheless, denied the application based on traffic and parking concerns.
While the aforementioned traffic study is the only such specific evidence in the record, a review of the record, however, does indicate that in spite of the study there were grave concerns about the traffic, access and egress to the proposed site and questions as to the adequacy of parking in the future. While some of these concerns were raised by members of the public attending the hearing; (ROR, P. p. 31.); many of these concerns were raised by members of the Commission itself. (See ROR, P.)
In denying the proposed modification to PDD #2, the Commission relied on its own knowledge in concluding that "based on their own experience and observations, the Commission has grave concerns and is not convinced that the site access and egress conditions and the peak parking demands anticipated from the proposed restaurant can be accommodated without safety problems, congestion and other adverse impacts on Bridgeport Avenue. Parking issues will become particularly acute if the low parking demands of the office supplier were replaced by the higher demands of a more active retail establishment. The applicant has not adequately responded to suggestions for interconnected facilities and/or elimination of the Bridgeport Avenue exit drive." (ROR, O.)
It is well-settled that a planning and zoning commission is entitled to take into consideration whatever knowledge they acquire by personal observation. Burnham v. Planning ZoningCommission, 189 Conn. 261, 267, 455 A.2d 339 (1983). Such personal knowledge and any observations made may be relied on to the same extent as if they were in evidence. Dram Associates v.Planning Zoning Commission, 21 Conn. App. 538, 542, CT Page 11257574 A.2d 1317 (1990). However, "an agency cannot capriciously ignore the testimony of expert witnesses." Strong v. ConservationCommission, 28 Conn. App. 435, 441, 611 A.2d 427 (1992). "Although the commission [is] entitled to deny an application because it did not believe the expert testimony, the commission [has] the burden of showing evidence in the record to support its decision not to believe the experts — i.e., evidence which undermined either the experts' credibility or their ultimate conclusions." Kaufman v. Zoning Commission, 232 Conn. 122, 156,653 A.2d 798 (1995).
Thus, in order to sustain the Commission's denial of the application, the court will look to see whether there is evidence undermining Apple East's traffic expert and his conclusion that a new Applebee's restaurant would not affect the traffic in the area.
In the present case, as already previously discussed, the members of the Commission were quite familiar with the area of the proposed restaurant and the record details fears about traffic in the area. These concerns were raised by both members of the public (ROR, P, p. 31.); and the commission which referred to the congestion on Bridgeport Avenue and expressed concern with the additional demands that would be placed on this road should the restaurant be constructed. (ROR, O.) The Commission was also concerned with access to the facility. (ROR, P, pp. 28-29.)
The record also shows that, aside from these concerns, the Commission felt that the traffic study did not adequately address specific aspects. Specifically, the commission expressed doubts and concerns as to adequacy of parking; (ROR, P, pp. 14-16.); and the possibility of a connector joining the Staples and Bradlees areas of the PDD, especially since Apple East had no control over the construction of a connector. (ROR, P, p. 18). With regards to the adequacy of parking, the traffic expert for Apple East testified that he had not studied how the proposed restaurant would exacerbate the parking problems in the event that the existing Staples property was converted to general retail use. (ROR, P, p. 15.) Also, one witness testified on the record that, at present, the Staples parking lot is already one-half to three-quarters full. (ROR, P, p. 31.) As to a possible connector between the proposed restaurant and existing facilities, the record indicates that such a construction was not likely to happen and had not been seriously addressed by Apple East. (ROR, P, p. 18.) Accordingly, Apple East, being a nonowner, had no CT Page 11258 control over the construction of a connector and admitted that the connector was beyond its powers. (ROR, P, p. 18.)
Both the lack of connector and the resulting parking inadequacies were among the reasons why the original application from Apple East was denied. As evident from the record, the Commission felt that the neither the traffic study nor the applicant adequately addressed these issues. Accordingly, there is evidence in the record undermining the accuracy and thoroughness of the traffic study commissioned by the plaintiff.
"The commission is entrusted with the function of interpreting and applying its zoning regulations." GordonConstruction Co. v. Planning Zoning Commission,35 Conn. App. 191, 195, 644 A.2d 964 (1994). Section § 34.8(f) of the Shelton Zoning Regulations requires the Commission to take into consideration, when approving a PDD, whether "[t]he streets and drives will be suitable and adequate to accommodate anticipated traffic and projected development intensity will not generate traffic in such amounts as to overload the street system in the area." (SROR, A, p. III-26). Requirements for the basic development plan to be considered as the basis for the PDD necessitate details concerning vehicular and pedestrian patterns; § 34.5.2d; and location of off-street parking. § 34.5.2e. Thus, the Commission, looking for compliance with these regulations could have found that, despite the conclusions of the plaintiff's traffic expert, parking was inadequate under the proposed plans submitted by Apple East.
"The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 525 A.2d 940 (1987). "If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission." Irwin v.Planning Zoning Commission, supra, 244 Conn. 629. "It is not the function of the reviewing court to weigh the evidence or to determine who is credible; that function is exclusively the board's." Mobil Oil Corp. v. Zoning Board of Appeals,35 Conn. App. 204, 211-12, 644 A.2d 401 (1994). CT Page 11259
Therefore, the commission's first reason for the denial of Apple East's application to modify the PDD is based on substantial evidence contained in the record. Even though Apple East presented a most favorable traffic impact study, the record shows that the commission still had doubts as to several areas not addressed therein. Accordingly, the commission could have weighed the cumulative evidence and denied the application for the primary reasons stated on the record.
Having found that the first reason for the commission's denial of the application is valid, the court will briefly address the other grounds of appeal, the issue of aesthetics and inconsistencies with the original approval of PDD #2, only for a greater degree of completeness.
Section 34.8 of the Shelton Zoning Regulations requires that the Commission consider whether, in paragraph (a) "The Planned Development District and the Standards and Basic Development Plans applicable therein will accomplish the purpose set forth in 34.1 [of the Shelton Zoning Regulations];[1]" and also in paragraph (c) whether "The planned Development District and the Standards and Basic Development Plans applicable therein will be consistent with any comprehensive plan of development adopted by the Commission for the Special Development Area." (SROR, A, p. III-25.) The record indicates that neither the original PDD plan, nor the 1997 modification to PDD #2 (allowing construction of the "Staples" building") called for a free-standing building such as the one proposed by the Apple East. (ROR, C.) Based on the general considerations of consistency quoted above, the Commission could have found that the free-standing building alone would have been incompatible with the requirements previously established for the PDD.
Therefore, the decision of the board was not illegal, arbitrary or capricious. Accordingly, the plaintiff's appeal is dismissed.
Grogins, J.