[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, A. Aiudi and Sons, LLC ("Aiudi"), appeals from a denial by the defendant, Plainville Planning and Zoning Commission ("the Commission"), of an application to conduct commercial sand and gravel mining on a property in Plainville. For the reasons set forth below, the court finds the issues in favor of the defendant.
The record contains the following relevant facts. On October 1, 1996, Aiudi applied to the Commission for site approval to remove sand and gravel from its property south of Camp Street in Plainville. Pursuant to notice, public hearings were held on November 12, 1996 and December 10, 1996.
At the November 12, 1996 public hearing, Aiudi informed the Commission that it was seeking approval of a plan to conduct excavation of 90,000 to 95,000 cubic yards of sand and gavel in a property zoned R-11. The CT Page 7465 subject property lies between an existing residential neighborhood and a concrete plant operated by Aiudi. (Return of Record ("ROR"), Item H(2), p. 26.) Other than a brief review of the area to be excavated, Aiudi presented no further evidence. (ROR, Item H(2), pp. 26-29.)
Owners of residential properties adjoining the Aiudi property appeared before the Commission and outlined a history of difficulties in living next to a site on which a commercial sand and gravel operation was taking place. (ROR, Item H(2), pp. 31-42.) The hearing was then recessed.
At the hearing on December 10, 1996, Attorney Gregory Granger intervened, pursuant to General Statutes § 22a-19, on behalf of several neighbors and set forth the neighbors opposition to Aiudi's application. (ROR, Item H(3), pp. 15-17.) He noted that the proposed operation violated existing state statutes and would render the residentially-zoned property unsuitable for residential use. (ROR, Item H(3), p. 16; ROR, Item HH.) He also emphasized that Aiudi had sought to change the zoning classification of the property to industrial use and that the Commissioners had rejected this plan. (ROR, Item H(3), p. 17.)
Granger then called four expert witnesses to testify regarding Aiudi's application. The first, Mitchell Wurmbrand, an expert in environmental air quality issues, testified that the proposed sand and gravel mining poses serious health concerns when conducted next to residential homes. He noted that the particles from such mining can cause chronic bronchitis, acute bacterial and viral bronchitis, bronchial asthma and pulmonary emphysema. (ROR, Item H(3), p. 18.) He testified that using the Department of Environmental Protection's ("DEP") standards for ambient air quality, the emissions from the site exceeded DEP regulatory standards by a factor of nearly two. (ROR, Item H(3), pp. 20-22.) He further testified that the proposed sand and gravel activity would be a "significant contributor" to the violation of those air standards. (ROR, Item H(3), p. 20.)
Allen Smarden, an expert on noise pollution, testified that Aiudi's trucks did not comply with existing noise standards as measured from the nearby residential properties as provided by the regulations promulgated by the DEP and that the proposed mining would violate state regulations regarding noise pollution. (ROR, Item H(3), pp. 23-26.)
Peter Marsele, a professional real estate appraiser, testified that the mining of sand and gravel on the Aiudi property had impact on the values of the neighboring residential properties. He testified that property values would be decreased by ten or fifteen percent below their existing values. (ROR, Item H(3), p. 28.) CT Page 7466
Finally, Clint Webb, an environmental and land use planner, testified that the proposed excavation would prevent the residentially-zoned property from being used for residential purposes in the future. He stated that the excavation would result in raising the water table so that any foundations or footings would be in ground water. (ROR, Item H(3), p. 32.) He also noted that the grading resulting from the sand and gravel mining would be hazardous to the neighboring residents. (ROR, Item H(3), p. 33.) He testified further that the excavation would cause high construction costs to develop residential housing on the property in the future. (ROR, Item H(3), p. 33.) He testified that in his eighteen years of preparing residential and commercial development plans, he had not encountered any plan to create such slopes immediately adjacent to existing residential homes. (ROR, Item H(3), p. 34.)
Aiudi presented no rebuttal evidence. The public hearing was then closed. (ROR, Item H(3), p. 38.) The Commission deliberated on the application at its January 14, 1977 meeting. (ROR, Item H(4)). The application was denied when it received only three favorable votes and failed to gamer a fourth vote needed for approval. (ROR, Item H(4)). This appeal followed.[1]
Aiudi raises two issues in this appeal. First, Aiudi argues that the neighbors' expert evidence cannot be used by the Commission to reject the zoning application. Secondly, Aiudi argues that no reason was given for the action taken by the Commission, except that one member made mention of a section of the Plainville zoning regulations as his reason for voting against the application. (ROR, Item H(4), p. 9.)
The Plainville zoning regulations indicate that if one proposes to remove sand and gravel from a residential zone as is R-11, then § 910 of Article 9 must be followed. (See ROR, Item MM.) This section allows the Commission on a case-by-case basis to grant a two year permit for sand and gravel excavation. Section 910 requires that the applicant also satisfy § 603, which provides in part as follows:
 5. Character and Appearance. The character and appearance of the proposed use, building, parking and loading areas, outside storage areas, signs, landscaping and external illumination shall be in general harmony with the character and appearance of the surrounding neighborhood and will not adversely affect the general health, safety or welfare of the inhabitants of the Town of Plainville. (ROR, Item MM, pp. 55-56.)
Aiudi argues that this regulation on the "proposed use" of the premises CT Page 7467 is general in nature and as such cannot serve as a basis of denial of a site plan approval, nor can any evidence in the record of health and safety serve as a basis of denial. Aiudi contends that it does not have to satisfy any criteria except the specific requirements of § 910.2. While some support for Aiudi's position may be found in TLC Development,Inc. v. Planning Commission, 215 Conn. 527 (1990), our Supreme Court inFriedman v. Planning Zoning Commission, 222 Conn. 262 (1992) made modifications to this general rule. Friedman indicates that off-site health and safety issues can be considered as long as the regulations permit such a consideration. Friedman v. Planning Zoning Commission, supra, 265-66. The case also indicates that general health and welfare criteria in zoning regulations can serve as the basis for denial of a site plan application unless the regulations expressly provide, as they did in TLC, that such criteria may only serve as a basis for modification of the site plan.
Two cases support this position. In Plainville NWD Limited Partnershipv. Town of Plainville Planning and Zoning Commission, Superior Court, Docket No. 467309 (August 28, 1996, Handy, J.), the plaintiff appealed from a denial of a site plan. It alleged error in part in that the planning and zoning commission had denied the application on off-site traffic concerns. The plaintiff relied specifically on the TLC case. The court rejected the argument, because of the change in law rendered inFriedman. "Accordingly, if regulations permit considerations, such as off-site parking, such an issue can be considered in site plan review. In addition, general health and welfare criteria in zoning regulations may serve as the basis for denial of a site plan unless the regulations expressly provide that such criteria can only serve as a basis for modification of the site plan (as the regulations so provided in TLC)." In Apple East v. Shelton Planning Zoning, Superior Court, judicial district of Ansonia at Milford, Docket No. 063497 (August 13, 1999, Grogins, J.), the court reached an identical conclusion on the status of off-site factors in light of Friedman.
In this case, the regulations permit the Commission to consider whether the proposed mining will have an adverse impact on health and safety and property values of neighboring properties. The Commission is permitted under § 603 not only to modify a site plan, but also to deny it. The evidence of the intervening neighbors could properly be considered in deciding whether to grant the requested excavation under Article 9.
Aiudi's second issue is that there was little or nothing said on the record as to why the Commission took its actions which resulted in a denial of Aiudi's application. Here, of course, most of the members of the Commission favored the application and did not discuss their reasons for their vote. Because of the nature of a zoning board, the Supreme CT Page 7468 Court has charged the trial court to search the record and if there is sufficient basis to uphold the board's decision. Protect Hamden/NorthHaven from Excessive Traffic and Pollution, Inc. v. Planning and ZoningCommission of Town of Hamden, 220 Conn. 527 (1991). Here, the record establishes that the mining poses a serious health risk, violates existing noise pollution standards, depreciates property values and destroys the ability to use that residentially-zoned property for residential purposes. The court concludes that the record supports the Commission's denial. Therefore, the appeal is dismissed.
Henry S. Cohn, Judge